# 24-1149-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MIKHAIL MEEROVICH,

*Plaintiff-Appellant,*

*v.*

BIG APPLE INSTITUTE, INC.,
BRONISLAV LEYDIKER,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the Eastern District of New York*

## APPENDIX

SAGE LEGAL LLC

*Attorneys for Plaintiff-Appellant*
18211 Jamaica Avenue
Jamaica, New York 11423
(718) 412-2421
emanuel@sagelegal.nyc



**Table of Contents**

**Page**

District Court Docket Entries ................................................................. A1

Notice of Motion by Defendants to Dismiss the Complaint,
  dated May 12, 2023 ............................................................. A6

Declaration of Bronislav Leydiker, Defendant,
  in Support of Motion, dated May 12, 2023 ...................................... A8

  Exhibit A to Leydiker Declaration -
  Support Staff Employment Agreement between
  The Big Apple Institute, Inc. and Mikhail Meerovich
  for the 2018-2019 School Year .................................................. A12

Declaration of Gerasimos Liberatos, for Defendants, in Support
  of Motion, dated May 12, 2023 ....................................... A23

  Exhibit B to Liberatos Declaration -
  Class and Collective Action Complaint,
  dated December 15, 2022 ......................................................... A25

Declaration of Mikhail Meerovich, Plaintiff, in Opposition
  to Motion, dated June 26, 2023 ....................................... A47

Memorandum and Order of the Honorable Dora L. Irizarry,
  So-Ordered on March 27, 2024 ....................................... A51

Judgment of the United States District Court for the Eastern District
  of New York, entered March 28, 2024 ........................................... A66

Notice of Appeal, dated April 25, 2024 ................................................. A67

**A1**

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:22-cv-07625-DLI-LB

| | |
|---|---|
| Meerovich v. Big Apple Institute, Inc. et al | Date Filed: 12/15/2022 |
| Assigned to: Judge Dora Lizette Irizarry | Date Terminated: 03/28/2024 |
| Referred to: Magistrate Judge Lois Bloom | Jury Demand: Plaintiff |
| Cause: 29:201 Fair Labor Standards Act | Nature of Suit: 710 Labor: Fair Standards |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Mikhail Meerovich**                              represented by    **Emanuel Kataev**
Milman Labuda Law Group PLLC
3000 Marcus Avenue
Suite 3W8
Lake Success, NY 11042
516-328-8899
Fax: 516-328-0082
Email: emanuel@sagelegal.nyc
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Akilov**
Mark Akilov
14744 Jewel Avenue
Flushing, NY 11367
646-361-6274
Email: makilov1@gmail.com
*TERMINATED: 04/26/2024*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Big Apple Institute, Inc.**                       represented by    **George Sitaras**
Sitaras & Associates, PLLC
200 Liberty Street
27th Floor
New York, NY 10281
212-430-6410
Email: George@Sitaraslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerasimos Dimitrios Liberatos**
200 Liberty Street, 27th Floor
New York, NY 10281

646-597-4625
Email: liberatos@sitaraslaw.com
*ATTORNEY TO BE NOTICED*

**Yi-Hsin Wu**
200 Liberty Street, 27th Floor
New York, NY 10281
929-330-6147
Email: yiwu2@law.cardozo.yu.edu
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bronislav Leydiker**                          represented by **George Sitaras**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerasimos Dimitrios Liberatos**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yi-Hsin Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/15/2022 | 1 | COMPLAINT against Big Apple Institute, Inc., Bronislav Leydiker filing fee $ 402, receipt number ANYEDC-16232310 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by Mikhail Meerovich. (Akilov, Mark) (Entered: 12/15/2022) |
| 12/16/2022 | | Notice: Re: Incomplete Civil Cover Sheet. The Clerk's Office cannot assign this case without a completed Civil Cover Sheet. Please resubmit corrected Civil Cover Sheet. This event can be found under the event Other Documents - Proposed Summons/Civil Cover Sheet. (SR) (Entered: 12/16/2022) |
| 12/16/2022 | 2 | Civil Cover Sheet.. by Mikhail Meerovich (Akilov, Mark) (Entered: 12/16/2022) |
| 12/19/2022 | 3 | Proposed Summons. by Mikhail Meerovich (Akilov, Mark) (Entered: 12/19/2022) |
| 12/19/2022 | 4 | Proposed Summons. by Mikhail Meerovich (Akilov, Mark) (Entered: 12/19/2022) |
| 12/20/2022 | | Case Assigned to Judge Dora Lizette Irizarry and Magistrate Judge Lois Bloom. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (KD) (Entered: 12/20/2022) |
| 12/20/2022 | 5 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold** |

| | | |
|---|---|---|
| | | your consent without adverse substantive consequences. **Do NOT return or file the consent <u>unless</u> all parties have signed the consent.** (KD) (Entered: 12/20/2022) |
| 12/20/2022 | 6 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (KD) (Entered: 12/20/2022) |
| 12/20/2022 | 7 | Summons Issued as to Big Apple Institute, Inc., Bronislav Leydiker. (Attachments: # 1 Summons) (KD) (Entered: 12/20/2022) |
| 03/13/2023 | 8 | SUMMONS Returned Executed by Mikhail Meerovich. Mikhail Meerovich served on 3/7/2023, answer due 3/28/2023. (Akilov, Mark) (Entered: 03/13/2023) |
| 03/28/2023 | 9 | NOTICE of Appearance by George Sitaras on behalf of Big Apple Institute, Inc., Bronislav Leydiker (aty to be noticed) (Sitaras, George) (Entered: 03/28/2023) |
| 03/28/2023 | 10 | NOTICE of Appearance by Gerasimos Dimitrios Liberatos on behalf of All Defendants (aty to be noticed) (Liberatos, Gerasimos) (Entered: 03/28/2023) |
| 03/28/2023 | 11 | NOTICE of Appearance by Yi-Hsin Wu on behalf of Big Apple Institute, Inc., Bronislav Leydiker (aty to be noticed) (Wu, Yi-Hsin) (Entered: 03/28/2023) |
| 03/28/2023 | 12 | STIPULATION *Extending Defendants' Time to Answer* by Big Apple Institute, Inc., Bronislav Leydiker (Wu, Yi-Hsin) (Entered: 03/28/2023) |
| 04/03/2023 | | ORDER: The Court so-orders the parties' stipulation to extend the time for defendants to respond to plaintiff's complaint. ECF No. 12 . Defendants shall respond to plaintiff's complaint by April 28, 2023. Ordered by Magistrate Judge Lois Bloom on 4/3/2023. (VP) (Entered: 04/03/2023) |
| 05/02/2023 | | Order re: Failure to Respond to the Complaint -- Despite having been given additional time to respond to the complaint by the magistrate judge, Defendants, which are represented by counsel, completely ignored the April 28, 2023 deadline. Defendants are admonished for failing to comply with Court orders. Accordingly, Defendants are directed to respond to the complaint no later than Monday, May 8, 2023. Failure to comply may result in sanctions and the Court directing the Clerk of the Court to enter a notation of default against Defendants. SO ORDERED by Judge Dora Lizette Irizarry on 5/2/2023. (CC) (Entered: 05/02/2023) |
| 05/02/2023 | 13 | Second MOTION for Extension of Time to File *Answer or Otherwise Respond to Complaint* by Big Apple Institute, Inc., Bronislav Leydiker. (Liberatos, Gerasimos) (Entered: 05/02/2023) |
| 05/03/2023 | | ORDER: Defendants request, with plaintiff's consent, to extend the time to respond to the complaint. ECF No. 13 . The request is granted. Defendants shall respond to the complaint by May 12, 2023. Ordered by Magistrate Judge Lois Bloom on 5/3/2023. (EW) (Entered: 05/03/2023) |
| 05/12/2023 | 14 | First MOTION to Dismiss *the Complaint* by Big Apple Institute, Inc., Bronislav Leydiker. (Attachments: # 1 Declaration of Bronislav Leydiker, # 2 Exhibit A-Support Staff Employment Agreement, # 3 Declaration of Gerasimos Liberatos, Esq., # 4 Exhibit B - Complaint, # 5 Memorandum in Support of Motion to Disimiss) (Liberatos, Gerasimos) (Entered: 05/12/2023) |
| 05/24/2023 | 15 | Consent MOTION for Extension of Time to File *opposition papers to Defendants' motion* by Mikhail Meerovich. (Akilov, Mark) (Entered: 05/24/2023) |
| 06/01/2023 | | ORDER granting 15 Motion for Extension of Time to File -- As an initial matter, Plaintiff's request for an extension of time to respond to Defendants' motion to dismiss the complaint should have been made **three** days prior to the deadline not two days as was done here in |

| | | violation of this Court's rules. Nonetheless, as the request is made with the consent of Defendants, it is granted. Plaintiff's response shall be filed June 26, 2023 and Defendants' reply shall be filed on July 11, 2023. The parties are reminded that they must forward to chambers one hard courtesy copy of their submissions immediately upon filing. SO ORDERED by Judge Dora Lizette Irizarry on 6/1/2023. (Irizarry, Dora) (Entered: 06/01/2023) |
|---|---|---|
| 06/26/2023 | 16 | MEMORANDUM in Opposition re 14 First MOTION to Dismiss *the Complaint* filed by Mikhail Meerovich. (Akilov, Mark) (Entered: 06/26/2023) |
| 06/26/2023 | 17 | AFFIDAVIT/DECLARATION in Opposition re 14 First MOTION to Dismiss *the Complaint of Plaintiff* filed by Mikhail Meerovich. (Akilov, Mark) (Entered: 06/26/2023) |
| 07/05/2023 | 18 | Consent MOTION for Extension of Time to File Response/Reply *in Further Support of Motion to Dismiss* by Big Apple Institute, Inc., Bronislav Leydiker. (Liberatos, Gerasimos) (Entered: 07/05/2023) |
| 07/25/2023 | 19 | REPLY in Support *of Motion to Dismiss* filed by All Defendants. (Liberatos, Gerasimos) (Entered: 07/25/2023) |
| 08/18/2023 | | ORDER finding as moot 18 Motion for Extension of Time to File Response -- The response to the motion was filed on the date requested. SO ORDERED by Judge Dora Lizette Irizarry on 8/18/2023. (Irizarry, Dora) (Entered: 08/18/2023) |
| 03/27/2024 | 20 | ORDER granting 14 Defendant's Motion to Dismiss -- For the reasons set forth in the ATTACHED WRITTEN MEMORANDUM AND ORDER, as the Court finds the forum selection clause valid and enforceable, Defendants' motion to dismiss is granted without prejudice to refiling in New York State Supreme Court, Kings County and the Court need not reach Defendants' motion to compel mediation and arbitration.The Clerk of the Court is directed to close this case. SO ORDERED by Judge Dora Lizette Irizarry on 3/27/2024. (Irizarry, Dora) (Entered: 03/27/2024) |
| 03/28/2024 | 21 | CLERK'S JUDGMENT: that Defendants' motion to dismiss is granted without prejudice to refiling in New York State Supreme Court, Kings County and the Court need not reach Defendants motion to compel mediation and arbitration. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 3/28/2024. (JP) (Entered: 03/28/2024) |
| 04/25/2024 | 22 | Letter MOTION to Substitute Attorney *for Plaintiff* by Mikhail Meerovich. (Attachments: # 1 Proposed Order - Stipulation of Substitution of Counsel) (Kataev, Emanuel) (Entered: 04/25/2024) |
| 04/25/2024 | 23 | NOTICE of Appearance by Emanuel Kataev on behalf of Mikhail Meerovich (notification declined or already on case) (Kataev, Emanuel) (Entered: 04/25/2024) |
| 04/25/2024 | 24 | NOTICE OF APPEAL as to 21 Clerk's Judgment, 20 Order on Motion to Dismiss,, by Mikhail Meerovich. Filing fee $ 605, receipt number ANYEDC-17810802. (Kataev, Emanuel) (Entered: 04/25/2024) |
| 04/26/2024 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 24 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/26/2024) |
| 04/26/2024 | | ORDER: Attorney Emanuel Kataev's motion to substitute counsel for plaintiff, ECF No. 22 , is granted. The Clerk of Court is respectfully directed to terminate attorney Mark Akilov from the docket. Ordered by Magistrate Judge Lois Bloom on 4/26/2024. (EW) (Entered: 04/26/2024) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/01/2024 14:34:09 | | | |
| **PACER Login:** | phpappeals10east | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-07625-DLI-LB |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MIKHAIL MEEROVICH,** | |
| **Plaintiff,** | **Case No. 1:22-cv-07625** |
| - against - | **NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| **BIG APPLE INSTITUTE INC., and BRONISLAV LEYDIKER** | |
| **Defendants.** | |

     **PLEASE TAKE NOTICE**, that upon the Declaration of Bronislav Leydiker dated May 12, 2023, the Declaration of Gerasimos Liberatos, Esq. dated May 12, 2023, and the exhibits annexed thereto, the accompanying Memorandum of Law, and upon all of the pleadings and proceedings heretofore had herein, Defendants Big Apple Institute Inc. and Bronislav Leydiker ("Defendants"), by and through their attorneys Sitaras & Associates, PLLC, will move this Court before the Honorable Dora Lizette Irizarry at the United States District Court, for the Eastern District of New York located at 225 Cadman Plaza East, Brooklyn, NY 11201, on such date as may be set by the Court, for an Order granting Defendants' motion to dismiss Plaintiff Mikhail Meerovich's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, compel arbitration pursuant to the Federal Arbitration Act, together with such other and further relief as the Court deems just and proper.

     **PLEASE TAKE FURTHER NOTICE** that opposition and reply papers shall be served in accordance Local Civil Rule 6.1(b).

.

1

**A7**

Dated: New York, New York
  May 12, 2023

          **SITARAS & ASSOCIATES, PLLC**

    By: _____

      George Sitaras, Esq.
      Gerasimos D. Liberatos, Esq.
    200 Liberty Street, 27th Floor
    New York, New York 10281
    Tel. (212) 430-6410
    *Attorneys for Defendants*

TO:

All counsel via ECF

2

**A8**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**MIKHAIL MEEROVICH,**

                    **Plaintiff,**

          **- against -**

**BIG APPLE INSTITUTE INC., and**
**BRONISLAV LEYDIKER**

               **Defendants.**

**Case No. 1:22-cv-07625**

---

<u>**DECLARATION OF BRONISLAV LEYDIKER**</u>

     I, BRONISLAV LEYDIKER, declare under penalty of perjury pursuant to 28 U.S.C.A §1746 that the following is true and correct:

     1.     I am a defendant in the above-captioned action.  I am also a manager of Big Apple Institute Inc. ("Big Apple"), in the referenced action, and have personal knowledge of the facts and circumstances set forth below.

     2.     I submit this Declaration in support of Defendants' motion to dismiss the complaint filed by plaintiff Mikhail Meerovich ("Mr. Meerovich") pursuant to Fed. R. Civ. P. 12(b)(3), and for such other and further relief as the Court deems just and proper.

     3.     Big Apple is a New York not-for-profit school founded in 1996.

     4.     Big Apple primarily serves low-income immigrant populations from Russia, Ukraine and other Eastern European communities that have made Brooklyn their home over the past three decades.  Most of the faculty and staff speak Russian or Ukrainian, as do most of the students and families.  Mr. Meerovich speaks Russian and English, and communicated regularly in both languages as most of the faculty and staff regularly do.

5.      I manage Big Apple's food service programs, which includes hiring and staffing Big Apple's kitchen facilities.

6.      Mr. Meerovich is a former employee of Big Apple who worked as an assistant cook in Big Apple's cafeteria from April 1, 2017, to December 16, 2020 (Complaint, at ¶ 19).

7.       While Big Apple's tries to have all employees enter into written employment contracts to ensure that its faculty and support staff are committed to work for a complete semester or school year, when possible, Mr. Meerovich was initially hired on a temporary basis to fill an assistant cook position that had opened up in April 2017.

8.      In December 2018, before the holiday recess, Big Apple decided to offer Mr. Meerovich a regular full-time position and presented him with a copy of Big Apple's "Support Staff Employment Agreement" (the "Agreement").

9.      I personally met with Mr. Meerovich in December 2018 before the holiday recess and I explained that Big Apple was offering him a full-time position and that if he accepts the position, he would be required to sign the Agreement.  I discussed this with him in both in English and Russian, and I told him to take the Agreement home to review it, that he was free to have the Agreement reviewed by an attorney before signing, and if the Agreement is acceptable, he should sign and return it to Big Apple after the holiday recess.

10.     Mr. Meerovich took the copy of the Agreement with him, and after the holiday recess, he returned the signed Agreement to Big Apple's financial office.  A true copy of the Agreement signed by Mr. Meerovich is attached hereto as **Exhibit "A"**.

11.     The term of the Agreement was extended pursuant to Section 7 of the Agreement. Big Apple did not enter into any new, subsequent or other employment agreement or arrangement with Mr. Meerovich.

12.     On December 16, 2020, Mr. Meerovich was terminated for cause, based on his disobedience and threatening behavior toward one Big Apple's cooks.

13.     On December 15, 2022, Meerovich commenced this action seeking damages for the following violations: (i) FLSA Overtime Wage Violations; (ii) NYLL Overtime Wage Violations; (iii) NYLL Failure to Notify; (iv) NYLL Failure to Keep Records; (v) NYLL Failure to Provide Spread of Hours Compensation; (vi) FLSA Pay Frequency; and (vii) NYLL Pay Frequency (Complaint, at ¶¶ 60-103).

14.     Section 18 of the Agreement requires that all disputes between Mr. Meerovich arising from his relationship with Big Apple be submitted first to mediation, as a condition precedent to binding arbitration.

15.     Section 19 of the Agreement requires that any action or proceeding that is brought in court shall be submitted to the Supreme Court of the State of New York, Kings County.

16.     Mr. Meerovich did not seek mediation with Big Apple prior to starting this lawsuit.

17.     Mr. Meerovich did not submit his claims to binding arbitration.

18.     Mr. Meerovich did not commence this lawsuit in the Supreme Court of the State of New York, Kings County.

19.     For these reasons, and as set forth in Defendants' Memorandum of Law in Support of the Motion to Dismiss, the complaint should be dismissed in its entirety, and if Mr. Meerovich chooses to pursue any claims against the Defendants, he must first seek mediation as a condition precedent, and if mediation fails to resolve his disputes, then he must be compelled to arbitrate his claims pursuant to the Agreement.

20.     No previous application for the relief herein has been made to the Court.

I declare under penalty of perjury that the foregoing is true and correct.  This declaration

is executed within the United States of America, in Brooklyn, New York, on May 12, 2023.

Bronislav Leydiker

# Exhibit

# A

Support Staff

EMPLOYMENT AGREEMENT

Between

The Big Apple Institute, Inc

And

*Michael Meerovich*

For the _2018-2019_ school year

TABLE OF CONTENTS

1

*MM* INITIALS

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (this "Agreement"), entered into this _1_ day of _1_ , 201_9_, by and between Big Apple Institute, a not-for-profit corporation duly organized under the laws of the state of New York (the "Employer"), and _Mikhail Marcovich_ (the "Employee").

Employee's Address:

Street Address _2580 Batchelder_ -Apt # _8D_ City _Brooklyn_ State _N.Y._  Zip _11235_

_Elder str._    **WITNESSETH:**

WHEREAS, the parties hereto desire to enter into this Agreement to define and set forth the terms and conditions of the employment of the Employee by the Employer;

NOW, THEREFORE, with the foregoing recitals incorporated herein by reference and in consideration of the mutual covenants and agreements set forth below, it is hereby covenanted and agreed by the Employer and the Employee as follows:

1.    Employment. The Employer hereby employs the Employee, and the Employee hereby accepts such employment, upon the terms and subject to the conditions set forth in this Agreement. The Employer hereby employs the Employee as its _cook-assistant_ and the Employee hereby agrees to serve in such capacity, for the period beginning _1    1_, 20_19_ ("Start Date"), and ending one (1) year thereafter ("End Date"), and subject to paragraphs6 and 7 herein ("Employment Period").

2.    Performance of Duties.    Employer is hereby hiring Employeefor the position of _cook-assistant_ . The Employee shall perform such duties assigned by the Employer, in the Employer's sole and absolute discretion, faithfully and efficiently subject to the direction of the Employee's supervisor and the Employer. In addition, the Employee shall have such other duties as may from time-to-time be reasonably assigned to Employee by the Employer. During the term of employment under this Agreement, Employee shall devote the time, energy and attention to the benefit and business of the Employer as may be reasonably necessary in performing Employee's duties pursuant to this Agreement. Any outside employment engaged by the Employee must not interfere or conflict with the Employee's ability to properly perform his/her job duties or conflict with any provision of this Agreement.

3.  Weekly Schedule

(a)    Employee will generally be required to work forty (40) hours per week,Monday through Friday, at such times as the Employer may schedule. Except as otherwise provided herein, or otherwise scheduled by the Employer, Employee is required to arrive for work by 8 a.m. and leave no later than 5 p.m. ("Regular Schedule"). Employee is required to punch in at the start of the workday and punch out at the end of the workday using the Employee Identification Card issued by the Employer.  The Employee shall not punch-in earlier than ten (10) minutes before the start of the Regular Schedule unless authorized to by the Employee's supervisor.  The foregoing notwithstanding, Employee may be required to work beyond the Regular Schedule at the sole discretion of the Employer ("Overtime Schedule"). In such cases, the Employee shall punch out of work at the end of Regular Schedule, punch in at the start of the Overtime Schedule, and punch out at the end of the Overtime Schedule.  The Employee shall comply with

1

_N.M._ INITIALS

all time-clock procedures that the Employer may implement from time-to-time. Time clock procedures shall be strictly enforced, and violation of any time-clock procedures by the Employee shall be grounds for reprimand and termination of employment.

(b)     Employee shall be entitled to one (1) lunch break of no more than one (1) hour per working day, between the hours of 11:00 AM and 2:00pm, which shall not be compensated. Employee is required to punch out at the start of the lunch break and punch in when returning from lunch breakusing the Employee Identification Card issued by the Employer.

(c)     In addition, Employee shall be entitled totwo authorized breaks of no more than ten (10) minutes each, which shall be compensated. Employee is required to punch out at the start of the authorized break and punch is when returning from the authorized break.

(d)     The foregoing notwithstanding, any extension of the aforementioned authorized breaks is contrary to the Employer's rules and any such extension shall not be compensated and shall lead to disciplinary action at the sole discretion of the Employer.

(e)     The Employee shall review time clock records provided by the Employer on a weekly basis (or more frequently as the Employer may require, in its sole discretion) to verify and confirm the accuracy of time clock records, and shall notify the Employer if the Employee believes there are any discrepancies or inaccuracies in the time clock records. The Employee shall, upon verification of the time clock records, and after any discrepancies or inaccuracies are corrected, sign the time clock record. The Employee's signature on the time clock records shall constitute a representation by the Employee to the Employer that it has reviewed and verified the accuracy of the time entries contained in such records. The Employee, by signing the time-clock record, further waives and releases the Employer for any claims, causes of actions, or damages that the Employee may have against the Employer based on, or arising from any inaccuracies in the time clock records.

    4.   Compensation and Benefits

(a)     Employer agrees to pay Employee the sum of $ 600 per week based on a 40-hour work week(i.e. an hourly wage of $ 15 ("Hourly Rate")) as compensation for services rendered to the Employer, such payment to be made semi-monthly, consistent with the Employer's normal payroll practices. The hourly rate is to be paid only for services rendered while Employee is actually employed by the Employer.

(b)     If the Employee works for more than 40 hours per week, Employer shall pay Employee overtime at an hourly rate equal to 1.5 times the amount of the Hourly Rate (i.e. $22 ("Overtime Rate").

(c)     Employee shall be entitled to such fringe benefits as may be provided from time-to-time by the Employer to other employees occupying similar positions. All of the employee benefit plans referred to or contemplated by this Agreement shall be governed solely by the terms of the underlying plan documents and by applicable law. Nothing in this Agreement shall impair the Employer's right to amend, modify, replace, and/or terminate any and all such plans

*M.M.* INITIALS

in its sole discretion, as provided by law, or to terminate this Agreement in accordance with its terms. This Agreement is for the sole benefit of Employee and the Employer, and is not intended to create an employee benefit plan or to modify the terms of existing plans.

(d)     Subject to the foregoing, the following is a list of current benefits provided to Employee:

(i)     Medical Insurance: The Employer shall provide family and medical insurance to the Employee as required of the Employer under applicable Federal, State and/or local laws, from time–to–time. Employee should contact Employer to discuss insurance benefits offered.

(ii) Tuition Benefit: The Employee has the right to register one of his/her children to the school run by Employer known as "Big Apple Academy". The Employee has a right to register one of his/her children to the **Big Apple Institute, Inc.** at no cost. The Employee will be charged full price for the second child.

5.   Leave

(a)     Employee shall be entitled to such leave as may be provided from time-to-time by the Employer to other employees occupying similar positions. All of the leave referred to or contemplated by this Agreement shall be governed solely by the terms of the underlying Employer policy, the Employer's discretion, and by applicable law. Nothing in this Agreement shall impair the Employer's right to amend, modify, replace, and/or terminate any and all such policies in its sole discretion, as provided by law, or to terminate this Agreement in accordance with its terms. This Agreement is for the sole benefit of Employee and the Employer, and is not intended to create an employee leave plan or to modify the terms of existing Employer policies.

(b)     Subject to the foregoing, the following is a list of current leave provided to Employee:

(i)     Vacation: Employee is required to request vacation from the Principal in advance. The Employer can approve or deny the request in its sole discretion and based on resources. Employer is flexible in approving time off when doing so would not interfere with Employer operations. Vacation days are granted only on a full day or half-day basis. Employee must accrue vacation days before they may be used. Employee shall accrue one half day of vacation days per month, for a maximum of six (6) days per year. Any unused accrued vacation days may not be accumulated or carried forward into the next year. Vacation days shall not accrue during any period of leave taken under paragraphs 5(b)(ii), (iii), (iv), (viii) and/or (ix) hereof.

3

 INITIALS

(ii)    Personal Leave: Employee is required to request personal days from the Principal at least seven (7) days in advance. Employee is limited to 5 days for personal days per year. Any unused personal days may not be accumulated or carried forward into the next year.

(iii)    Sick Leave: Situations may arise where Employee needs to take time off to address medical or other health concerns. Employee shall be entitled to a minimum of five (5) days of paid sick leave per year. Employee shall also be entitled to an additional five (5) days of unpaid sick leave per year. The Employer requests the Employee to provide notification to the Principal as soon as reasonably possible when taking time off, provided however that if Employee knows in advance that s/he will need to take sick leave, Employee must provide at least seven (7) days' notice of such leave. Upon the request of the Employer, the Employee shall submit a statement in writing explaining that paid sick leave was taken for an authorized purpose under the New York City's Earned Sick Time Act. Employer may request medical documentation from Employee if Employee takes three (3) or more consecutive days of sick leave.

(iv)    Family and/or Medical Leave: The Employer shall provide family and medical leave to the Employee as required of the Employer under applicable Federal, State and/or local laws, from time–to-time.

(v)    Holidays: The Employer observes the following holidays: New Year's Day, Easter/Passover,Memorial Day, Independence Day, Labor Day, Thanksgiving, Christmas Day.

(vi)    Jury Duty: Upon notification by a court to report for jury duty, the Employee shall immediately provide proof of service of a jury duty summons, showing the dates of such service. Employee shall use his or her best efforts to request an adjournment of jury duty to a period in which school is not in session. In the event this request is not granted Employer will comply with applicable New York State laws regarding jury duty. Employer will pay employees $40.00 per day for the first three (3) days of jury service. Employee will not be paid anyways or salary that the Employee would have otherwise been entitled to during jury service, but may opt to use paid personal days for jury service.

(vii)    Voting: If the Employee does not have "sufficient time" outside of working hours to vote, Employee may take up to two hours at the beginning or end of the workday, with pay. "Sufficient time" is defined as four consecutive hours either (i) between the opening of the polls and the beginning of the workday or (ii) between the end of the workday and closing of the polls. Employee must notify Employer no more than ten and no less than two days before the day of the election for which the Employee will take time.

(viii)    Military Leave: Employees called to active military duty, military reserve or National Guard service may be eligible to receive time off under the Uniformed Services Employment and Reemployment Rights Act of 1994. To receive time off, employees must provide notice and a copy of their report orders to an immediate supervisor. Military leave will be granted on anunpaid basis. Upon return from military leave with an honorable discharge, the Employer may reinstate the employment of the Employee.

*M.R* INITIALS

(ix)    Leave of Absence: The Employee may request an unpaid leave of absence after the exhaustion of paid leave. A request for a leave of absence must be submitted in writing in advance to the Employee's immediate supervisor. Leave of absences that are granted are unpaid, and will not be considered until the Employee has exhausted all appropriate accrued leave balances. Continuation of employee benefits during a leave of absence will be addressed on an individual basis, as required by law.

6.    Termination.    Notwithstanding anything contrary in this Agreement, it is expressly understood and agreed that Employee is an employee at-will and, accordingly, either the Employer or the Employee may terminate the employment under this Agreement at any time and for any reason (with or without cause). Employer is not required to provide any prior notice of termination to Employee. Employee shall provide at least ten (10) days' prior notice of intent to terminate this Agreement. If the Employee gives notice pursuant to this paragraph, the Employer shall have the right to relieve the Employee, in whole or in part, of Employee's duties under this Agreement without further obligation to compensate the Employee for the remainder of the ten (10) days. In the event of termination of employment, the Employee shall be entitled only to the prorated salary and benefits earned through the last date of employment.

7.    Renewal.    Each year, Employer shall have the right, in its sole discretion, to renew this Agreement for a renewal term of one year. In the event this Agreement is renewed, all of the terms, covenants, and conditions of this Agreement shall continue in gull force and effect.

8.    Competing Businesses.    During the period of his employment under this Agreement, the Employee shall not be employed by or otherwise engage in or be interested in any business in competition with the Employer, or with any of its subsidiaries or affiliates.

9.    Disclosure.    The Employee agrees that during the term of employment by the Employer, and for a period of one (1) year after termination thereof, Employee will disclose only to the Employer all ideas, methods, plans, developments or improvements known by Employee which relate directly or indirectly to the business of the Employer, whether acquired by the Employee before or during Employee's employment by Employer. Nothing in this paragraph shall be construed as requiring any such communication where the idea, plan, method or development is lawfully protected from disclosure as a trade secret of a third party or by any other lawful prohibition against such communication.

10.    Work Product. To the extent not contrary to applicable state law, Employee acknowledges and agrees that any and all inventions, discoveries, improvements, trademarks, copyrightable work, or other intellectual property created, produced, designed and/or developed, in whole or in part, individually or jointly with others, during the term of Employee's employment, which is/are directly or indirectly within the scope of Employer's past, current or planned future operations, are the Employer's exclusive property, and shall be immediately disclosed and assigned to Employer. Employee further agrees that any and all such applicable item(s) is a work made for hire for the Employer within the definition of Section 101 of Title 17 of the United States Code, or any successor provision, and any corresponding state law

*M.M.* INITIALS

provisions. Employee's above obligations to Employer shall be continuous and ongoing and shall survive the termination of this Agreement.

11.    <u>Confidentiality.</u>    During the course of Employee's employment with the Employer, Employee will have access to, and/or become familiar with, confidential information, proprietary information and/or trade secret information, and documentation related thereto, belonging to the Employer regarding its operations, methods and practices, including, but not limited to, books, records, lists, computer programs, payroll records, financial data or documentation, banking statements, and other information or documents regarding Employer's revenues, business methods, processes and practices, marketing strategies and plans, as well as information pertaining to the Employer's past, present and prospective clients, including, but not limited to, identity, address, e-mail address, telephone numbers, telefax numbers, account numbers, objectives, service requirements, and fees charged, and the Employer's past, present and prospective referral sources, including, but not limited to, identity, address, e-mail address, telephone numbers, telefax numbers, and fee arrangement (all such confidential, proprietary and trade secret information and documentation is referred to herein as the "Confidential Information"). Employee acknowledges that such Confidential Information is owned, and shall continue to be owned, solely by the Employer, regardless of whether or not Employee introduced a client to the Employer or caused the receipt of such Confidential Information by the Employer. During the term of Employee's employment, and forever thereafter (regardless of the circumstances surrounding termination), Employee agrees not to use, communicate, reveal or otherwise make available such information for any purpose whatsoever (except solely and exclusively in furtherance of Employee's employment duties to Employer), nor will Employee divulge (or cause to be divulged) any such Confidential Information to any person, partnership, joint venture, corporation or entity other than Employer. Information and documents will be deemed "confidential" regardless of whether or not they are marked "confidential" or carry any other marks or designations. The above restrictions apply to all Confidential Information regardless of the format in which it is created or maintained (hard copy, electronic, or otherwise), or where it is maintained, including, but not limited to, all computer(s) that Employee may possess or have access to away from the Employer's offices.

12.    <u>Return of Employer's Property.</u>    Upon termination of employment, for any reason, or at any other time that the Employer may so request, Employee shall immediately deliver to Employer all Confidential Information, employer and/or client property and/or information, including, but not limited to, all equipment, telephones, credit cards, keys, software, manuals, passwords, financial and tax documents, memoranda, letters, files, records, papers, notes, lists, computer programs, reports, books, and all other documents (and all copies thereof) in Employee's possession, custody and/or control.

13.    <u>Equitable Relief.</u>Employee acknowledges and understands that his/her violation of any of the above covenants or restrictions will result in irreparable harm to the Employer, and that an award of money damages, alone, will not be adequate to remedy such harm. Consequently, in the event that Employee violates or threatens (i.e. indicates—in any manner or form—to any person or entity an intention or desire to violate this Agreement) to violate any of the above covenants or restrictions, the Employer, in addition to any other rights and remedies provided under law, shall be entitled to both: (a) a preliminary or permanent injunction in order to

6

*M.M.* INITIALS

prevent the continuation of such harm; and (b) moneydamages, including, without limitation, all reasonable costs and attorneys' fees incurred by the Employer in enforcing the provisions of this Agreement.In any such legal action, the Employer shall not be required to plead or prove irreparable harm or lack ofan adequate remedy at law or post a bond as a condition of obtaining equitable relief. Nothing containedherein shall preclude the Employer from pursuing any action or other remedy for any breach or threatenedbreach of this Agreement, all of which shall be cumulative. All legal actions or proceedings seeking equitable relief may be brought in either a court of competent jurisdiction, or in an arbitration or dispute resolution tribunal designated under this Agreement, in the sole discretion of the Employer.

14.  Notices.  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employer at its principal executive offices or, if to the Employee, by personal delivery to the Employee at the offices of the Employer, or by overnight courier, registered or certified mail, at the last address of the Employee on filewith the Employer.

15.  Severability.  The terms, conditions, covenants, warranties and representations of this Agreement shall be considered mutually independent and exclusive of each other. Any adjudication by any arbitrator or court of competent jurisdiction that any part of this Agreement is invalid, shall not affect the balance or remainder, or any portion thereof, of this Agreement, which shall remain in full force and effect.  The foregoing notwithstanding, in the event any term, condition or covenant not to complete, disclose or use confidential or proprietary information is deemed unenforceable by a court or arbitrator, then the such court or arbitratorshall have the power to exercise its discretion to reform such terms, conditions or covenants to be reasonable under the circumstancesand enforceable by the Employer.

16.  Non-Assignment.  The interests of the Employee under this Agreement are not assignable, and shall not be subject to the claims of Employee's creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered.

17.  Successors.  This Agreement shall be binding upon, and inure to the benefit of, the Employer and its successors and assigns and upon any person acquiring, whether by merger, consolidation, purchase of assets or otherwise, all or substantially all of the Employer's assets and business.

18.  Dispute Resolution.  The Employer and Employee agree to submit to all other disputes, controversies, and claims arising out of or relating to this Agreement and/or the Employee's relationship with the Employer, including, but not limited to, claims arising under the New York Labor Law, Fair Labor Standards Acts, New York City Administrative Code, and/or any federal, state or local wage and hour laws, anti-discrimination laws, the Family Medical Leave Act, and/or any federal, state, or local law affecting any of the Employees' rights or benefits of any kind  (hereinafter, collectively "Disputes"), to binding arbitration before Judicial Arbitration and Mediation Services (JAMS), or its successor.  The Employee agrees not to sue in court with respect to any Disputes, and agrees not to bring any Disputes as a class action or seek to have any Disputes consolidated with any other action, proceeding, lawsuit or arbitration, it being agreed that any Disputes between the Employer and Employee will be heard in a separate proceedings.  The Employee hereby waives any rights the Employee may have to assert any claims or causes of action it may have against the Employer in connection with any Disputes as a class action, or join in any class action that may have been commenced by another

7

_M.M._ INITIALS

person or entity against the Employer. The parties agree that they shall submit to non-binding mediation before JAMS as a condition precedent to arbitration, and if the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for final and binding arbitration pursuant to JAMS' Streamlined Arbitration Rules then in effect. Either party may commence mediation by providing to JAMS and the other party a written request for mediation, setting forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from the JAMS panel of neutrals and in scheduling the mediation proceedings. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation or arbitration by any of the parties, their agents, experts and attorneys, and by the mediator or any arbitrator, are confidential, privileged and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation or arbitration. Either party may initiate arbitration with respect to the matters submitted to mediation by filing a written demand for arbitration at any time following the initial mediation session or at any time following 30 days from the date of filing the written request for mediation, whichever occurs first ("Earliest Initiation Date"). At no time prior to the Earliest Initiation Date shall either side initiate an arbitration or litigation related to this Agreement except to pursue a provisional remedy that is authorized by law or by JAMS Rules or by Agreement of the parties. All applicable statutes of limitation and defenses based upon the passage of time shall be tolled until 30 days after the Earliest Initiation Date. The parties will take such action, if any, required to effectuate such tolling. TheArbitration shall be conducted in the English language. At the conclusion of the arbitration, the arbitrator shall issue a written decision that sets forth the essential findings and conclusions upon which the arbitrator's award or decision is based. Each party will bear its own costs and attorneys' fees of the arbitration. All claims filed or brought contrary to this Article shall be considered improperly filed and will allow the non-filing party to recover attorneys' fees and costs. The dispute resolution procedures set forth in this Article shall apply to all Disputes between the Employer and Employee regardless of whether the Dispute arose prior to the date of this Agreement, or after the termination of this Agreement.

19. _Applicable Law_. This Agreement shall be construed in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. **The parties agree that the Supreme Court of the State of New York, County of Kings, shall have exclusive jurisdiction over any suit, action or proceeding arising out of or relating to this Agreement. The Employee hereby agrees and consents to personal jurisdiction of the Courts of the State of New York, County of Kings, as the exclusive jurisdiction and venue for any disputes, controversies, or claims arising out of the relationship between the parties and this Agreement, and waives all defenses based on forum non-conveniens.**

20. _Counterparts_. The Agreement may be executed in two or more counterparts, any one of which shall be deemed the original without reference to the others.

21. _Headings_.Headings for the paragraphs herein are for convenience only and shall not be construed ininterpreting this Agreement.

22. _Representations and Acknowledgements_. Employee represents, acknowledges, and agrees: (a) that Employee understands all of the Employee's obligations under this Agreement; (b) that this Agreement does not cause an employment/association for any term; (c)that the covenants set forth herein regarding Confidential Information and restricting

8

_M.M._ INITIALS

disclosure thereof, non-competition and non-solicitation/interference and acknowledging ownership of intellectual property, are reasonable, appropriate and necessary for the protection of the Employer's legitimate business interests; (d) that Employee has been provided with good and valuable consideration in return for the execution of this Agreement (e) that Employee is an employee at-will and that either Employee or the Employer may end the employment relationship at any time and for any reason; (f) that Employee has read all of the terms and conditions of this Agreement, and has had a reasonable and sufficient opportunity to consult with an attorney before entering into this Agreement; and (g) that Employee freely enters into this Agreement.

23.     <u>Entire Agreement</u>.  This Agreement contains the entire agreement and supersedes all prior agreements and understandings, oral or written, with respect to the subject matter hereof. This Agreement may be changed only by an agreement in writing signed by the party against whom any waiver, change, amendment, modification or discharge is sought.  In entering into this Agreement, the Employee represents that he/she has not relied upon any promises, covenants, terms, conditions, warranties and/or representations other than those that are expressly set forth in writing in this Agreement.

IN WITNESS WHEREOF, the Employer and Employee affix their signatures to this Agreement on the date first written above.

**EMPLOYEE:**

Signature: _Meerovich_____

Printed Name: _MIKHAEL  MEEROVICH_____

**EMPLOYER:**

Big Apple Institute Inc.

By:_____
Name:
Title:

9

_M.M._ INITIALS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MIKHAIL MEEROVICH,** | |
| **Plaintiff,** | **Case No. 1:22-cv-07625** |
| **- against -** | |
| **BIG APPLE INSTITUTE INC., and BRONISLAV LEYDIKER** | |
| **Defendants.** | |

**DECLARATION OF GERASIMOS LIBERATOS, ESQ.**

**GERASIMOS LIBERATOS**, an attorney licensed to practice law in the State of New York and in the United States District Court for the Eastern District of New York, declares, pursuant to 28 U.S.C. § 1746, under the penalties of perjury as follows:

1.      I am a partner at Sitaras & Associates PLLC, attorneys for defendants Big Apple Institute Inc. and Bronislav Leydiker (collectively, the "Defendants") in the above-captioned case, and I have personal knowledge of the facts and circumstances hereinafter set forth based on my review of the files and records maintained by my office in connection with the matter.

2.      This declaration is submitted in support of Defendants' motion to dismiss plaintiff Mikhail Meerovich's ("Meerovich") complaint ("Complaint") pursuant to Fed R. Civ. P. 12(b)(3), and for such other and further relief as the Court deems just and proper.

3.      A true and correct copy of the Complaint dated December 15, 2022 is attached hereto as Exhibit "B".

4.      For the reasons set forth in the accompany Memorandum of Law in Support, Defendants respectfully request that the Court grant its motion in its entirety.

1

**A24**

5.   No previous application for the relief herein has been made to the Court

I declare under penalty of perjury that the foregoing is true and correct.  This declaration

is executed within the United States of America, New Hyde Park, New York, on May 12, 2023.

_____

Gerasimos D. Liberatos, Esq.

# Exhibit

# B

Case 1:22-cv-07625-BMC Document 14 Filed 05/15/23 Page 2 of 22 PageID #: 163

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MIKHAIL MEEROVICH,                                 Case No.:  1:22-cv-7625

                          Plaintiff,               **CLASS & COLLECTIVE
                                                   ACTION COMPLAINT**
        -against-

BIG APPLE INSTITUTE, INC., and
BRONISLAV LEYDIKER,

                          Defendants.

-------------------------------------------------------------X

        Plaintiff MIKHAIL MEEROVICH (hereinafter, "Plaintiff" or "Mr. Meerovich"), by

and through his attorneys, AKILOV LAW, P.C., files this Complaint against Defendants, BIG

APPLE INSTITUTE, INC., (hereinafter, "Corporate Defendant" or "the Day Care") and

BRONISLAV LEYDIKER (hereinafter the "Individual Defendant"), and states upon

information and belief as follows:

### INTRODUCTION

        I.      Plaintiff brings this action to recover unpaid wages, overtime wages, liquidated

damages, interest (pre- and post-judgment), spread-of-hours compensation, and reasonable

attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C.

§§ 201, *et seq.*) ("FLSA"), the wage orders promulgated thereunder by the United States

Department of Labor ("USDOL") and codified at 29 C.F.R. §§ 500, *et seq.*, and Articles 6,

7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New

York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 146, *et seq.* ("NYLL").

2.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiff, overtime compensation for all hours worked in excess of forty (40) hours for each workweek or the spread-of-hours pay each employee was entitled to for time worked in excess of ten (10) hours.

3.     On April 1, 2017, Plaintiff was hired by Defendants to work at the Corporate Defendant as a kitchen employee.

4.     Plaintiff regularly worked **approximately fifty (50) to fifty-five (55) hours per week**, but was not compensated properly for the actual number of hours he worked, including for his overtime hours each week, or for the spread-of- hours pay he was lawfully entitled to applicable under state and federal laws.

5.     This is because he was required to work off the clock from 7:00 AM when he arrived to work until 8:00 AM when he was scheduled to start work and was not permitted to clock in before 8:00 AM despite working since 7:00 AM.

6.     This is because he was required to work off the clock from 5:00 PM until he completed his work at 6:00 PM and was not permitted to clock out after 5:00 PM despite working until 6:00 PM.

7.     This is also because he was required to work during his lunch hour and was routinely and consistently interrupted during his meal on a daily basis and nonetheless had a one hour meal break deducted from his hours worked on a daily basis.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction), 29 U.S.C. § 201 *et seq.* (FLSA), and 28 U.S.C. § 1337 (interstate commerce).

9.      This Court has supplemental jurisdiction over the New York State law claims, conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper the Eastern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because the Day Care is located within this District.

## THE PARTIES

11.      Plaintiff was a resident of Kings County, New York at all relevant times.

12.      Plaintiff was hired by the Defendants on April 1, 2017.

13.      The Day Care is a corporation authorized to do business under the laws of New York.

14.      Upon information and belief, the Individual Defendant resides in Kings County, New York and is a managerial employee of the Day Care.

15.      During all relevant times herein, the Defendants were Plaintiff's employer within the meaning of the FLSA and the NYLL.

## NATURE OF THE ACTION

16.      Plaintiff brings this action (a) pursuant to the FLSA and the regulations thereto; and (b) pursuant to the NYLL (§ 650 *et seq.*) and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. §§ 146, *et seq.* based upon the following acts and/or omissions which Defendants committed:

     i.      Defendants' failure to pay proper minimum wage and overtime compensation required by federal and state law and regulations to Plaintiff, who worked in excess of forty (40) hours each week;

     ii.      Defendants' failure to pay Plaintiff spread-of-hours compensation for every

day he worked in excess of ten (10) hours, as required by NYLL §§ 190, *et seq.,* and §§

650, *et seq.*, and New York State Department of Labor regulations § 146-1.6;

     iii.  Defendants' failure to provide Plaintiff with a wage notice and proper

paystubs as required by NYLL § 195; and

     iv.  Defendants' failure to timely pay Plaintiff on a weekly basis in accordance with

the FLSA and the NYLL.

17.    Defendants have knowingly and willfully engaged in a policy, pattern, and

practice of violating the FLSA and NYLL, as detailed in this Complaint.

### STATEMENT OF FACTS

18.    At all times relevant hereto, the Defendants committed the following acts and/or

omissions intentionally and willfully, with knowledge that they have been violating federal and

state laws and Plaintiff has thus been economically injured.

19.    Plaintiff worked for the Defendants from April 1, 2017 to December 16, 2020.

20.    Plaintiff was hired by Defendants to work as a kitchen employee at their day care,

located at 524 Lake Street, Brooklyn, NY 11223-4642.

21.    Immediately after his hiring, Mr. Meerovich began working grueling five (5) day,

fifty-five (55) hour workweeks for the Defendants at the Day Care.

22.    Upon information and belief, Plaintiff was regularly *scheduled* to work five (5) shifts

a week, usually beginning at 8:00 a.m. until 5:00 pm each day.

23.    However, Plaintiff came in at 7:00 a.m. every day and left at 6:00 p.m. every day.

24.    Although Defendants knew Plaintiff worked from 7:00 a.m. until 6:00 p.m.,

Defendants forbid Plaintiff from clocking in earlier than 8:00 a.m. and later than 5:00 p.m.

25.    Defendants thus knowingly, willfully, and intentionally assigned Plaintiff to work

these fifty-five (55) hour workweeks.

Case 1:22-cv-07262-BU-LB Document 14 Filed 05/15/23 Page 56 of 212 PageID #: 567

26. Yet, for these long hours, Defendants only paid Plaintiff $13.00 per hour for every hour worked, with no overtime premium, except his hourly rate was increased to $15.00 per hour in 2020.

27. By paying him the same hourly rate for all hours worked, Defendants failed to pay Mr. Meerovich proper overtime wages for each overtime hour he worked.

28. Additionally, Defendants never paid Plaintiff the spread-of-hours compensation he was entitled to for each day that he worked an interval in excess of ten (10) hours, which was every day that he worked.

29. Upon information and belief, the Day Care maintained records of the hours Plaintiff worked, yet no matter how those hours varied week-to-week, Plaintiff received only a flat hourly rate of $13.00 or $15.00 per hour for all the work he performed, in direct violation of the law.

30. At all relevant times during his employment with the Defendants, Plaintiff was <u>not</u> exempt under federal and state laws requiring employers to pay employees overtime.

31. Notwithstanding, at all relevant times, the Defendants knowingly and willfully failed to pay Plaintiff lawful overtime compensation of one and one-half times (1.5x) his regular rate of pay for all hours worked over forty (40) in a given workweek.

32. The Defendants also knowingly and willfully failed to pay Plaintiff the spread-of-hours pay he was entitled to for every day he worked in excess of ten (10) hours.

33. Further, the Defendants paid Plaintiff on a bi-weekly basis rather than weekly, depriving Plaintiff of his hard-earned money every other week in violation of the law.

34. Moreover, the Defendants have willfully disregarded and purposefully evaded the recordkeeping requirements of the FLSA and NYLL and supporting regulations, by failing to provide Plaintiff with a time-of-hire wage notice detailing his rate(s) of pay and frequency of pay, neglecting to give Mr. Meerovich any accurate wage statements,

35.     In addition, Defendants entirely disregarded their duty to maintain accurate payroll records.

36.     Upon information and belief, the Defendants, by and through their agents and employees, chose not to maintain adequate and accurate written records of actual hours worked and true wages earned by Mr. Meerovich in order to facilitate their exploitation of his labor.

37.     Upon information and belief, Defendants willfully and intentionally maintained a pattern and practice of unlawfully failing to appropriately compensate its employees and actively disregarding record-keeping requirements.

38.     Additionally, as if Defendants had not economically injured Plaintiff enough, in December of 2020 when Plaintiff was sick, they unlawfully fired Plaintiff just because he was sick and failed to him for his final week's pay.

39.     Upon information and belief, it is clear that Defendants have knowingly, willfully, intentionally, and *maliciously* committed widespread violations of the FLSA and NYLL, entitling Mr. Meerovich to his full pay, 100% liquidated damages as set forth herein, as well as attorneys' fees & costs, and any and all other remedies this Court deems just, equitable, and proper.

## FLSA COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

41.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper compensation for all hours worked, due to a policy of time shaving.

42.     The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

43.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

44.     Plaintiff brings claims for relief pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all non-exempt employees (including but not limited to cooks, bakers, and drivers) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

45.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable.

46.     The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

47.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

48.     Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

49. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages, including overtime due to time shaving, (ii) failing to pay them the spread of hours premium for workdays exceeding ten (10) hours, (iii) failing to provide Class Members with proper wage statements with every payment of wages, and (iv) failing to properly provide wage notices to Class Members, at date of hiring and annually, per requirements of the NYLL.

50. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

51. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.

52. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

53. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where 6 individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

54. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

55. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.

56. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

57. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

58. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

59. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

A. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

B. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

C. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

D. Whether Defendants properly notified Plaintiff and the Class Members of their regular hourly rate and overtime rate;

E. Whether Defendants improperly paid Plaintiff and the Class Members on a fixed salary basis, when New York law requires that all non-exempt employees be paid on an hourly basis;

F. Whether Defendants paid Plaintiff and the Class Members overtime wages at a proper rate that is at least one-and-one-half times the regular rate of pay;

G. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

H. Whether Defendants caused time shaving by paying Plaintiff and Class Members only for those hours which they were scheduled to work, rather than for the actual hours that they worked;

I. Whether Defendants paid Plaintiff and the Class Members the spread of hours premium for workdays that exceeded ten (10) hours;

J. Whether Defendants timely paid Plaintiff and the Class Members on a weekly basis as required by law;

K. Whether Defendants provided proper wage statements to Plaintiff and the Class Members per requirements of the NYLL; and

L.  Whether Defendants provided proper wage and hour notices to Plaintiff and the Class Members per requirements of the NYLL.

**STATEMENT OF CLAIMS**

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Wage Violations)**

60.  Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

61.  The FLSA provides that no employer engaged in commerce shall employ a covered employee for a workweek longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times (1.5x) the regular rate at which he is employed, or one and one-half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

62.  Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek, but was not compensated at a rate of one and a half times (1.5x) his hourly pay for each hour worked over forty (40).

63.  At all relevant times hereto, Defendants operated under policies, programs, practices, procedures, protocols, routines, and rules of knowingly and willfully failing and refusing to pay Plaintiff at one and a half times his regular rate of pay for all hours he worked in excess of forty (40) hours per workweek.

64.  Further, at all relevant times hereto, Defendants actively failed to keep accurate required records of the overtime worked by Plaintiff, both knowingly and willfully, in violation of the FLSA.

65.  Instead, Defendants gave Plaintiff a flat nine hundred dollars ($900) a week to compensate him for both the regular and the overtime hours he worked each week.

66.     As evidenced by Defendants' threatening text message to Mr. Meerovich for retaining counsel to obtain rightful redress, Defendant was knowingly and intentionally disregarding its legal obligations under the FLSA.

67.     Upon information and belief, Defendants' failure to pay Plaintiff at an accurate overtime rate in violation of the FLSA was not in good faith.

68.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 as Defendants has shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

69.     Accordingly, Plaintiff seeks damages in the amount of his respective unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, and other such legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(NYLL Overtime Wage Violations)**

70.     Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

71.     At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

72.     New York law prohibits an employer from permitting an employee to work without paying overtime wages of one and a half times (1.5x) of his regular rate for all hours worked in excess of forty (40) in any workweek.

73.     Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly, and repeatedly failed to pay Plaintiff at the required overtime rates, one and a half times (1.5x) his regular rate of pay, for all hours worked in excess of forty (40) per workweek.

Case 4:22-cv-07825-DLB Document 14-4 Filed 05/5/23 Page 34 of 22 PageID #175

74.     Again, as evidenced by the threatening text message Defendants sent Plaintiff after receiving his demand letter, Defendants' violation of the NYLL was also not in good faith.

75.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages, and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
#### (NYLL Failure to Notify)

76.     Plaintiff repeats and realleges every paragraph above as though fully set forth herein.

77.     Pursuant to §195(1) of the NYLL, within ten business days of Plaintiff's hiring, Defendants were obligated to provide him with a notice describing, *inter alia*, his hourly regular and overtime rates of pay.

78.     Pursuant to §195(3) of the NYLL, Defendants were obligated to provide Plaintiff with a wage and pay statement, specifying his regular and overtime rates of pay, hours worked, and regular pay period.

79.     Defendants willfully and knowingly failed to provide Plaintiff with any accurate wage notices or paystubs regarding any of the hours Plaintiff worked at the Day Care a blatant violation of §195 of the NYLL.

80.     As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks damages in accordance with §195 of the NYLL for each week Defendants failed to provide such notice and paystubs, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (NYLL Failure to Keep Records)

81.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.    NYCRR § 146-2.1 requires that employers maintain, establish, and preserve an employee's weekly payroll records for a period of not less than six years

83.    Defendants did not <u>ever</u> maintain, establish, or preserve *accurate* records of Plaintiff's weekly pay.

84.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of the actual hours worked and true wage earned by Plaintiff in order to facilitate their exploitation of Plaintiff's labor.

85.    Defendants' failure to maintain accurate records was not in good faith.

86.    As a result of Defendants' unlawful conduct, Plaintiff has sustained damages, including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

## FIFTH CLAIM FOR RELIEF
### (NYLL Failure to Provide Spread of Hours Compensation)

87.    Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

88.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

89.    By completely disregarding Plaintiff's hours spent working for the Day Care during his 7:00 a.m. to 6:00 p.m. shifts, Defendants were willfully and knowingly avoiding paying Plaintiff the spread-of-hours pay he was owed for these shifts.

90.     Thus, Defendants' failure to pay Plaintiff his due spread-of-hours pay constituted a willful violation of the NYLL, and was not in good faith.

### SIXTH CLAIM FOR RELIEF
**(FLSA Pay Frequency)**

91.     Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.     The overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

93.     Defendants have failed to pay Plaintiff and the FLSA Collective overtime for hours that they worked in excess of 40 hours in a workweek.

94.     In addition, Defendants have failed to timely pay Plaintiff and the FLSA Collective wages on a weekly or biweekly basis, entitling them to liquidated damages for aforesaid late payments.

95.     As a result of Defendants' unlawful acts, Plaintiff and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to the FLSA.

### SEVENTH CLAIM FOR RELIEF
**(NYLL Pay Frequency)**

96.     Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

97.     During his employment, virtually all of Plaintiff's work involved physical labor.

98.     With respect to the work performed by Plaintiff, Defendants utterly and egregiously failed to pay him within the time period and intervals required by NYLL § 191(1)(a).

99.     The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Defendants and protect Plaintiff.

100.   Consequently, Defendants were required to pay Plaintiff weekly and not later than seven calendar days after the end of the week in which wages were earned.

101.   Instead of paying Plaintiff on a weekly basis for this work, Defendants paid them every other week, or on a bi-weekly basis.

102.   As a result, Plaintiff was deprived of his pay every other week.

103.   Due to Defendants' violations of NYLL § 191(1)(a), Plaintiff is entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

A.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

B.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

C.   An award of unpaid overtime wages, including due to Defendants' policy of time shaving under the FLSA and NYLL;

D.   An award of unpaid spread of hours premium due under the NYLL;

E.   An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

F.  An award of liquidated and/or punitive damages as a result of Defendants' willful
failure to pay proper wage and overtime compensation and retaliation, pursuant to
29 U.S.C. § 216;

G.  An award of liquidated and/or punitive damages as a result of Defendants' willful
failure to pay proper wage and overtime compensation, and retaliation, pursuant to
the NYLL;

H.  An award of pre-judgment and post-judgment interest, costs and expenses of this
action together with reasonable attorneys' and expert fees and statutory penalties;

I.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

J.  Designation of this action as a class action pursuant to F.R.C.P. 23;

K.  Designation of Plaintiff as Representative of the Class; and

L.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a
trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York
December 15, 2022

/s/ Mark Akilov, Esq.

**AKILOV LAW, P.C.**
Mark Akilov, Esq.
147-44 Jewel Ave
Flushing NY 11367
646-361-6274
MAkilov1@gmail.com

*Attorneys for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff, MIKHAIL MEEROVICH, hereby demands that BIG APPLE INSTITUTE, INC.,
hereinafter "Defendant") take affirmative steps to preserve all recordings, data, documents, and all
other tangible things that relate to Plaintiff, the events described herein, any third party associated
with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account
or number or symbol relating to them. These materials are likely very relevant to the litigation of
this claim. If Defendant are aware of any third party that has possession, custody, or control of any
such materials, Plaintiff demands that Defendant request that such third party also take steps to
preserve the materials. This demand shall not narrow the scope of any independent document
preservation duties of the Defendant. You are required to maintain and preserve all documents and
records that may be relevant in this matter.  Any destruction of such records, whether purposeful
or due to a failure to institute sufficient protocols to preserve evidence, may subject the Company
to judicial sanctions in the event of formal legal action.

Dated: Flushing, New York
     December 15, 2022

/s/ *Mark Akilov, Esq.*

**AKILOV LAW, P.C.**
Mark Akilov, Esq.
147-44 Jewel Ave
Flushing NY 11367
646-361-6274
MAkilov1@gmail.com

*Attorneys for Plaintiff*

### DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

**TO: BIG APPLE INSTITUTE, INC.**

**PLEASE TAKE NOTICE,** that Plaintiff MIKHAIL MEEROVICH intends to demand and does demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, and Section 609 of the Limited Liability Company Law of New York, payment of debts, wages and/or salaries due and owing to him as a laborer, servant and/or employee of the above corporations and/or limited liability companies for services performed by him for the above corporations and/or limited liability companies within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations and/or limited liability companies, and has expressly authorized the undersigned, as his attorney, to make this demand on their behalf.

**PLAINTIFF HEREBY DEMANDS** the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: Flushing, New York
December 15, 2022

/s/ *Mark Akilov, Esq.*

**AKILOV LAW, P.C.**
Mark Akilov, Esq.
147-44 Jewel Ave
Flushing NY 11367
646-361-6274
MAkilov1@gmail.com

*Attorneys for Plaintiff*

NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for ONE THIRD (1/3) or such amount as the court awards. All rights relating to attorney's fees have been assigned to counsel.

Dated: Flushing, New York
   December 15, 2022

         _/s/ Mark Akilov, Esq._

         **AKILOV LAW, P.C.**
         Mark Akilov, Esq.
         147-44 Jewel Ave
         Flushing NY 11367
         646-361-6274
         MAkilov1@gmail.com

         _Attorneys for Plaintiff_

**CLIENT AFFIRMATION**

I, MIKHAIL MEEROVICH, hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Defendant BIG APPLE INSTITUTE, INC., to pay me as required under New York State Labor Law ("NYLL") and federal law including the Fair Labor Standards Act ("FLSA").

I, MIKHAIL MEEROVICH, also authorize the filing of this consent in the action(s) contesting such conduct.

*MIKHAIL MEEROVICH*
Print Name

*Mikhail Meerovich*
Signature

*12/15/2022*
Date

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MIKHAIL MEEROVICH,

                             Plaintiff,

        -against-

BIG APPLE INSTITUTE INC., and
BRONISLAV LEYDIKER,

                           Defendants.
-----------------------------------------------------------------X

**Case No.: 1:22-cv-7625 (DLI) (LB)**

**DECLARATION OF
MIKHAIL MEEROVICH IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

         Mikhail Meerovich declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

         1.     I am the Plaintiff in the above-referenced case.

         2.     As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of the documents filed in support of the Defendants' motion to dismiss.

         3.     My attorney is fluent in both Russian and English and translated this declaration for me prior to my signing it.

         4.     I have reviewed the documents submitted by the Defendants in support of their motion to dismiss, and wish to address several incorrect statements made by Defendant Bronislav Leydiker ("Leydiker") in his declaration before explaining the circumstances of the "agreement."

         5.     First, Leydiker states that I speak Russian and English, and communicated regularly in both languages, but the truth is that Leydiker only spoke to me in Russian, never English.

         6.     While I am fully fluent in Russian, my English is basic and rudimentary, such that I can communicate in English, but I am unable to read and understand a contract.

7.      I only recall being approached by Leydiker when being interviewed for a position with Defendants in or about April 2017.

8.      However, I was never hired on a part-time or temporary basis, and worked full-time since I began working for Defendants.

9.      In December 2018, I met with a woman who worked for Defendants named Alla that worked in the bookkeeping office.

10.      The employees were called one by one, such that after an employee returned to his station, another was called to meeting with Alla.

11.      The employees and I were not addressed in a group and instead the Defendants opted to speak to us individually.

12.      When I met with Alla, the entire meeting took approximately three (3) minutes and was very rushed.  She spoke to me only in Russian, not English.

13.      I was told that my hours were going to decrease from eight (8) hours a day to 7.4 hours per day going forward, but that my pay would be unaffected, even though I worked much more hours than that every single day that I worked.

14.      I was told that my salary of approximately $26,000.00 per year would remain the same.

15.      Alla placed documents in front of me and directed me to fill things in on the spot.

16.      I was given no opportunity to review and it was effectively implied that I cannot keep my job unless I sign the documents then and there, which I was requested to do.

17.      Contrary to Leydiker's declaration, he did not tell me: (i) I can take the agreement home to review it; (ii) I was free to have the agreement reviewed by an attorney before signing it; or (iii) if the agreement was acceptable, I should sign and return it to him after the holiday recess.

18.     In fact, as set forth above, Leydiker was not even the one who met with me!

19.     Moreover, I was given no time whatsoever to review it and was conveyed to me that unless I sign it right away, I will lose by job.

20.     Neither Leydiker nor Alla discussed the agreement with me in Russian, nor was the agreement translated.

21.     There was no explanation as to what the agreement contained, except that "this is the work agreement," or words to that effect.

22.     During COVID, I was asked to come to work and start working earlier at 7:30 AM, but was told not to clock in until the scheduled time of 8:00 AM.

23.     I often came at 7:15 AM instead because there was so much to be done.

24.     I bring this to the court's attention because the Defendants cannot have it both ways: they cannot fail to abide by their own agreement, yet expect me to abide by it, especially when I was given no chance to read nor understand the terms of the agreement.

25.     Had I been afforded any opportunity to review this agreement, I would have attempted to at least negotiate its terms prior to signing it.

26.     I respectfully request that this Court deny the relief requested herein, or – in the alternative – to require a hearing such that Plaintiff can prove he never agreed to arbitrate his claims for the reasons set forth above.


[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 26 ,
2023.

Mikhail Meerovich

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MIKHAIL MEEROVICH,                              :
                                                :
                            Plaintiff,          :
                                                :       **MEMORANDUM AND ORDER**
              -against-                         :
                                                :       **22-cv-7625(DLI)(LB)**
BIG APPLE INSTITUTE INC., and                   :
BRONISLAV LEYDIKER,                             :
                                                :
                            Defendants.         :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Mikhail Meerovich ("Plaintiff") filed the instant action against his former

employer, Big Apple Institute, Inc. ("Big Apple"), and one of its agents, Bronislav Leydiker

("Leydiker") (collectively, "Defendants") on behalf of himself and similarly situated employees

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the

New York Labor Law ("NYLL"), §§ 190 *et seq.* and 650 *et seq. See*, Complaint ("Compl."), Dkt.

Entry No. 1.  Defendants move to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(3) for improper venue alleging that a forum selection clause in Plaintiff's Support

Staff Employment Agreement (the "Employment Agreement") requires any disputes be brought

exclusively in New York State Supreme Court, Kings County.  Mot. to Dismiss, Dkt. Entry No.

14; Employment Agreement ¶ 19, Dkt. Entry No. 14-2.  In the alternative, Defendants move to

compel mediation and arbitration under the terms of the Employment Agreement.  Employment

Agreement ¶ 18.  Plaintiff opposed the motion contending that he is not bound by the forum

selection, meditation, and arbitration clauses because, among other things, he could not understand

the contract as it was written in English and he was subjected to high pressure tactics into signing

it.  Pls.' Mem. of Law in Opp'n ("Opp'n").  Defendants replied.  Reply, Dkt. Entry No. 19.

For the reasons set forth below, Defendants' motion to dismiss is granted without prejudice to refiling in New York State Supreme Court, Kings County.  As such, the Court need not reach Defendants' motion to compel mediation and arbitration.

## BACKGROUND

Plaintiff was employed by Defendant Big Apple from April 1, 2017 to December 16, 2020 as a kitchen worker.  Compl.  ¶¶ 19–20.  Big Apple is a day care center located in Brooklyn, New York that primarily serves low income Eastern European immigrant communities.  *Id.*; Declaration of Bronislav Leydiker ("Leydiker Decl.") ¶ 4, Dkt. Entry No. 14-1.  Most of the faculty, staff, students, and families at Big Apple, including Plaintiff, speak Russian or Ukrainian.  Leydiker Decl.  ¶ 4; Declaration of Mikhail Meerovich (Meerovich Decl.) ¶ 6, Dkt. Entry No. 17.

Plaintiff alleges that Defendants engaged in four categories of unlawful practices under the FLSA and NYLL.  First, he claims Defendants failed to pay him overtime wages for 55-hour work weeks.  Compl. ¶¶ 21–27, 60–75.  Second, Plaintiff asserts that Defendants failed to pay him spread of hours compensation for each day he worked more than ten hours.  Compl. ¶¶ 28, 87–90.  Third, he claims that Defendants engaged in pay frequency violations by paying him biweekly instead of weekly.  Compl. ¶¶ 33, 91–103.  Finally, he alleges that Defendants disregarded recordkeeping and notice requirements by failing to maintain accurate records and provide wage notice and accurate wage statements at the time of hire.  Compl. ¶¶ 34–37, 76–86.

In December 2018, after working at Big Apple for over a year, Plaintiff met with "Alla," one of Big Apple's bookkeepers, to execute a formal employment agreement.  Meerovich Decl. ¶ 9.  The Employment Agreement was written in English.  *See generally*, Employment Agreement. Plaintiff is fluent in Russian, but claims he only has a "basic and rudimentary" understanding of English.  Meerovich Decl. ¶ 6.  While he "can communicate in English," he is "unable to read and

understand a contract" in the English language.  *Id.*  Plaintiff asserts that he was "pushed"[1] into Alla's office for a "three . . . minute[]" conversation where she explained, in Russian, changes to his hours and salary, and "directed" him to fill out the Employment Agreement "on the spot." *Id.* at ¶¶ 12–15; Opp'n at 6.  Plaintiff alleges that he was "given no opportunity to review" the Employment Agreement, and it "effectively [was] implied that [he could not] keep [his] job unless [he] sign[ed] the documents then and there, which [he] was requested to do." Meerovich Decl. ¶ 16.  He further contends that he had "no time whatsoever to review" the agreement and it "was conveyed to [him]" that he would lose his job if he did not "sign it right away." *Id.* at ¶ 19.  Alla did not explain the contents of the Employment Agreement , only stating that it was the "work agreement." *Id.* at ¶ 21.  However, Plaintiff does not dispute that he signed the Employment Agreement or that the Employment Agreement attached as an exhibit to Defendants' motion is in fact, the document he signed.  Notably, while Plaintiff asserts that the Employment Agreement was executed in December 2018, the agreement actually is dated January 1, 2019.  *See*, Employment Agreement at 1.

Defendants counter that Plaintiff is bound by a forum selection clause contained in the Employment Agreement, which states:

> Applicable Law. This Agreement shall be construed in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. **The parties agree that the Supreme Court of the State of New York, County of Kings, shall have exclusive jurisdiction over any suit, action or proceeding arising out of or relating to this Agreement. The Employee hereby agrees and consents to personal jurisdiction of the Courts of the State of New York, County of Kings, as the exclusive jurisdiction and venue for any disputes, controversies, or claims arising out of the relationship between the parties and this Agreement, and waives all defenses based on forum non-conveniens.**

---

[1] It is unclear whether Plaintiff intended to use the word "pushed" literally or if it was merely a stylistic choice by Plaintiff's Counsel.

Defs.' Mem. at 8, Dkt. Entry No. 14-5 (emphasis in original); Employment Agreement ¶ 19 (emphasis in original).  Defendants assert that the forum selection clause: (1) was "reasonably communicated" to Plaintiff; (2) designated New York State Supreme Court, Kings County as the exclusive venue to resolve disputes; (3) covers the claims and parties to this action; and (4) it would not be unreasonable or unjust to enforce the clause against Plaintiff.  Defs.' Mem. at 12–15.

In support of the motion, Defendant Leydiker submitted a declaration contradicting Plaintiff's version of events regarding the execution of the Employment Agreement.  *See generally*, Leydiker Decl.  Leydiker attests that: (1) he met with Plaintiff personally in December 2018; (2) he told Plaintiff he could take the Employment Agreement home to review it on his own or with an attorney; and (3) Plaintiff returned the signed Employment Agreement after the holiday recess.  Leydiker Decl. ¶¶ 9–10.

By contrast, Plaintiff contends that: (1) the forum selection clause was not "reasonably communicated" to him because (a) his native language is Russian and he has limited proficiency in the English language; (b) Defendants engaged in high pressure tactics and misrepresented the Employment Agreement; and (c) the text of the clause itself is inconspicuous; and (2) enforcing the forum selection clause would be unfair or unjust because he will not be able to recover certain statutory remedies on a class basis under New York's class action statute.  Opp'n at 8.

<b>DISCUSSION</b>

**I.      Legal Standard**

Defendants have framed their motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).  However, they actually seek to enforce a forum selection clause in the Employment Agreement to resolve the instant dispute in state court.  Thus, the Court interprets the

motion as one for dismissal based on *forum non conveniens*. *See*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) (explaining that "the appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens," not Fed. R. Civ. P. 12(b)(3)). "A valid and enforceable contractual forum selection clause can constitute sufficient grounds for dismissal." *Yovel-Bash v. Wellesley Asset Secured Portfolio, Inc.*, 2013 WL 4781539 at *8 (S.D.N.Y. Sep. 5, 2013) (citing *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011)).

In evaluating a motion to dismiss based on a forum selection clause, the Court typically relies solely on the pleadings and affidavits. *Martinez v. Bloomberg LP*, 740 F.3d 211, 216–17 (2d Cir. 2014) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)). The party seeking to avoid enforcement of the clause is entitled to have disputed facts resolved in its favor, and no disputed fact should be resolved against that party absent an evidentiary hearing. *Id.* (citing *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)). However, whether to hold an evidentiary hearing is within the sound discretion of the district court. *Thibodeau v. Pinnacle FX Invs.*, 2008 WL 4849957, at *4 (E.D.N.Y. Nov. 6, 2008) (citations omitted).

Here, Plaintiff's affidavit consists of bald assertions that Defendants engaged in high pressure tactics, but is devoid of facts substantiating his assertions. Defendants' affidavit, on the other hand, provides facts contradicting Plaintiff's version of events, further corroborated by the Employment Agreement Plaintiff admits he signed. However, in this case, an evidentiary hearing is unnecessary because the forum selection clause is valid and enforceable as a matter of law. *See*, *Phillips*, 494 F.3d at 383; *Thibodeau*, 2008 WL 4849957 at *5 (finding evidentiary hearing unnecessary because "plaintiff has alleged no facts that would provide grounds to invalidate the

forum selection clause").   Accordingly, the Court will proceed solely on the pleadings and affidavits.

The Second Circuit in *Phillips* set forth a four-prong inquiry courts must engage in when determining whether to dismiss claims based on a forum selection clause: (1) whether the clause "was reasonably communicated to the plaintiff[,]" which is "a question of law."   *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995); (2) whether the clause is mandatory or permissive; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *See*, *Phillips*, 494 F.3d at 383.   If the first three elements are met, the forum selection clause "is presumptively enforceable." *Id.*

Fourth, the resisting party can rebut the presumption of enforceability by making a "sufficiently strong" showing "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010).   This exception to enforceability is interpreted narrowly, rendering forum selection clauses unreasonable only if: (1) their incorporation into the agreement was the result of fraud or overreaching; (2) for all practical purposes, the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the clauses contravene a strong public policy of the forum state.   *Id.* (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir.1993)).   Under the circumstances of this case, Plaintiff cannot rebut the enforceability of the forum selection clause as discussed further below.

## II.   Validity of the Forum Selection Clause

### A.   Reasonable Communication

Here, the forum selection clause was reasonably communicated to Plaintiff.  Plaintiff does not dispute that he was presented with and signed the Employment Agreement.  Instead, he argues that his assent to the agreement was invalid under the doctrine of unconscionability and, consequently, no contract was formed because: (1) he has a limited understanding of the English language and could not understand the Employment Agreement; (2) Defendants directed him to sign it on the spot without an opportunity to review it; (3) Defendants "effectively implied" that he would lose his job if he did not sign the agreement; and (4) Defendants did not explain the nature of the Employment Agreement and misrepresented it as merely a "work agreement."  *See*, Meerovich Decl. ¶¶ 6, 9, 12, 15–16, 19, 21.

Plaintiff's assertions are contradicted by Defendant Leydiker's declaration.  Leydiker attests that he did personally meet with Plaintiff in December 2018, reviewed the Employment Agreement with him and told Plaintiff that he could take the document home to review it further himself or with an attorney.  Moreover, Leydiker attested that Plaintiff returned the Employment Agreement after the holidays, which is supported by the January 1, 2019 date on the Employment Agreement. *See*, Employment Agreement at 1.  Notably, Plaintiff does not challenge the Employment Agreement itself.

The parties apparently agree that New York law governs the interpretation and validity of the Employment Agreement.  Accordingly, the Court will apply New York law.  *See, Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such implied consent . . . is sufficient to establish choice of law." (internal quotation marks omitted)).  To establish unconscionability pursuant to New York law,

"there must be a showing that such a contract is both procedurally and substant[ively] unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp.2d 566, 571 (S.D.N.Y. May 28, 2009)).

As to procedural unconscionability, Plaintiff asserts, in conclusory fashion, that he was given "no opportunity to review" the Employment Agreement, and it was "effectively implied" that he "[could not] keep [his] job" unless he signed the agreement on the spot. Meerovich Decl. ¶¶ 6, 16. The Court need not accept these vague and conclusory assertions. *Smith v. Metro. Museum of Art*, 2016 WL 10571898, at *1 (S.D.N.Y. Dec. 28, 2016), aff'd, 697 F. App'x 96 (2d Cir. 2017) (explaining that courts "need not accept allegations that are vague or conclusory" at the motion to dismiss stage). Plaintiff does not allege that Defendants actually uttered any threat. Nor does he attest in his declaration that he asked for and was denied an explanation of, or opportunity to review, the Employment Agreement. *See, e.g.*, *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703, at *13 (S.D.N.Y. May 6, 2015) (arbitration clause was valid even though plaintiffs, Spanish speaking immigrants with limited resources and education, "felt pressured to sign documents on the spot without a chance to review them" because there was "no evidence that anyone actually uttered [] a threat [to their employment] . . . [and,] even if someone had, that would not be enough to make the agreement unconscionable"). These bald assertions by Plaintiff are contradicted by Defendant Leydiker's declaration, wherein he attests that he met he met with Plaintiff personally and let him review the agreement over the holiday break. Leydiker Decl. ¶¶ 9– 10. "Even if acceptance of the agreement was a condition of employment, courts within this circuit have held that it would not be unconscionable. *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *8 (S.D.N.Y. Sept. 24, 2010) (collecting cases); *Sammy's Fishbox, LLC*,

2015 WL 2152703 at *13 ("[T]hat Plaintiffs felt they had to sign the agreement in order to keep their jobs does not make the agreement unconscionable.").  Consequently, Plaintiff has failed to establish that the forum selection clause was not "reasonably communicated" to him.

Significantly, Plaintiff admittedly "can communicate" in English and has a "basic and rudimentary" understanding of the English language.  Meerovich Decl. ¶ 6.  Plaintiff's ability to read and understand the Employment Agreement is supported by the fact that he appropriately filled out the contract's blanks in English.  *See,* Employment Agreement ¶¶ 1–2.  As Plaintiff is not completely illiterate in English, he had a duty to read and understand the terms of the Employment Agreement.  *See, Sammy's Fishbox*, 2015 WL 2152703 at *13 (finding arbitration clause valid where "Plaintiffs [were] capable of conversing in English to a limited extent").

The Second Circuit and New York State appellate courts have held repeatedly that, absent fraud, "the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him." *Ragone*, 595 F.3d at 122; *Holcomb v. TWR Express, Inc.*, 11 A.D.3d 513, 514 (2nd Dept. 2004) ("A party who executes a contract is presumed to know its contents and to assent to them. . . . [and] [a]n inability to understand the English language, without more, is insufficient to avoid this general rule."); *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 163 (1930) ("If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.").

Contrary to Plaintiff's assertion, Defendants' description of the contract as a "work agreement" is not a misrepresentation and does not constitute procedural unconscionability. Meerovich Decl. ¶ 21; *See, Sammy's Fishbox*, 2015 WL 2152703 at *14 (statement that contracts

were "work documents or documents as part of [plaintiffs'] employment application," was not a misrepresentation). A document containing the terms and conditions of employment is, in fact, a "work agreement." Plaintiff does not allege that Defendants otherwise misrepresented the nature of the contract.

Even if the Court were to assume, *arguendo*, that Plaintiff established procedural unconscionability, he does not allege sufficiently that the forum selection clause is substantively unconscionable. *See*, *Ragone*, 595 F.3d at 121 ("Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable . . . as to be unenforceable according to its literal terms." (internal quotation marks and citation omitted)). Plaintiff essentially argues that the Employment Agreement is substantively unconscionable because: (1) it increased his hourly rate from $12 to $13, but decreased his number of hours such that his salary "effectively remained the same"; and (2) he will be unable to pursue recordkeeping violations under the NYLL as a class action in state court. Opp'n at 2, 8.

Plaintiff's first argument is belied by the literal terms of the Employment Agreement, which lists Plaintiff's hourly rate at $15.00 per hour for a total of $600 per week. Employment Agreement ¶ 4(a). As to his second contention, Plaintiff does not cite any authority in support of his claim that he cannot pursue NYLL recordkeeping violations on a class basis in state court. However, even if he cannot pursue a class action, he still may do so on an individual basis. As an initial matter, Plaintiff has not established that a collective action or class treatment is appropriate in this case. Indeed, most of his class and collective action allegations consist of bald, boilerplate language. Compl. ¶¶ 40–59. Secondly, and importantly, parties often waive the class action mechanism altogether. Thus, it is unclear how waiver of a single remedy on a purported class basis would be unconscionable. *See, Lobel v. CCAP Auto Lease, Ltd.*, 74 Misc. 3d 1230(A), at *9 (N.Y. Sup. Ct.,

Westchester Cnty. 2022) (finding class action waiver in arbitration clause valid and enforceable); *Chatziplis v. PriceWaterhouseCoopers LLP*, 2018 WL 3323820, at *3 (S.D.N.Y. July 6, 2018) (applying New York law and concluding that class action waiver in arbitration agreement was not substantively unconscionable).

Finally, the Employment Agreement's plain text reasonably communicated the existence of the forum selection clause. A forum selection clause is reasonably communicated to the resisting party "if it is phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Della Del Vaticano*, 818 F. Supp.2d 597, 604–605 (E.D.N.Y. Aug. 24, 2011), *aff'd* , 714 F.3d 714 (2d Cir. 2013); *Saye v. First Specialty Ins. Co.*, 2015 WL 1737949, at *4 (E.D.N.Y. Apr. 16, 2015) ("[T]he forum selection clause was clearly stated in the [contract] and was thus reasonably communicated."). Here, the forum selection clause is set forth in a separate paragraph of the agreement and is written in bold text. It unambiguously states that the "**Supreme Court of the State of New York, County of Kings, shall have exclusive jurisdiction**" over the parties' disputes. Employment Agreement ¶ 19 (emphasis in original); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 WL 421793, at *5 (S.D.N.Y. Mar. 5, 2004) ("[The] forum selection clause was in no way hidden from [the nonmoving party] or buried in contract minutia. Rather, the clause was its own paragraph, set-off by a title clearly indicating its purpose.").

The Court finds unavailing Plaintiff's argument that the forum selection clause is inconspicuous because it appears on the penultimate page of the contract without capitalization. Opp'n at 8. Plaintiff cites no authority for this assertion. Indeed, similar and even less conspicuous forum selection clauses have been upheld. *See, e.g.*, *Effron*, 67 F.3d at 9 (forum selection clause stated in fine print was reasonably communicated to plaintiff); *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp.3d 429, 444 (S.D.N.Y. Nov. 22, 2022) (forum selection clause listed in twentieth

paragraph titled "Governing Law" was reasonably communicated).  Thus, the forum selection clause was reasonably communicated to Plaintiff.

### B.    Mandatory or Permissive

Plaintiff does not and cannot legitimately dispute that the forum selection clause is mandatory, nor can he.  It clearly provides that the "**Supreme Court of the State of New York, County of Kings, <u>shall</u> have <u>exclusive</u> jurisdiction**" over the parties' disputes, and emphasizes that "**the Courts of the State of New York, County of Kings, [are] the <u>exclusive</u> jurisdiction and venue for any disputes.**"  Employment Agreement ¶ 19 (bold in original and emphasis added).  "A forum selection clause is considered mandatory where: (1) it confers exclusive jurisdiction on the designated forum or (2) incorporates obligatory venue language." *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (internal quotation marks omitted); *See also*, *Saye*, 2015 WL 1737949 at *2, 5 (forum selection clause submitting the parties to the "exclusive jurisdiction of the Courts of the State of New York" was mandatory); *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp.2d 313, 320–23 (E.D.N.Y. Feb. 17, 2010) (forum selection clause stating that disputes "shall be maintained" in New Jersey state or federal court as the "exclusive jurisdiction" was mandatory).  There is no question that the forum selection clause is mandatory.

### C.    Claims and Parties Subject to the Clause

The Court finds that the claims and parties at issue are subject to the forum selection clause, which Plaintiff does not dispute.  The clause is not limited to claims involving the contract itself.  Notably, it also covers disputes "**arising out of or relating to**" the agreement and those "**arising out of the relationship between the parties.**" *See*, Employment Agreement ¶ 19 (emphasis in original); *See also*, *Lahoud v. Document Techs. LLC*, 2017 WL 5466704, at *4 (S.D.N.Y. Nov. 14,

2017) (statutory employment discrimination claims were subject to forum selection clause where provision covered any action "arising out of" or "relating to" the contract).

Moreover, Leydiker may enforce the forum selection clause even though he is a nonsignatory. As Big Apple's food service program supervisor, Leydiker is "closely related" to Big Apple and his enforcement of the clause was "foreseeable" to Plaintiff, a kitchen staffer asserting claims relating to his employment. *See*, *Magi XXXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013); *Lahoud*, 2017 WL 5466704 at *4 (nonsignatory executives and Plaintiff's immediate supervisor were "sufficiently close" to corporate signatory employer to invoke the forum selection clause)

### D.      Rebutting the Presumption of Enforceability

Plaintiff has failed to make a "sufficiently strong" showing that enforcement of the forum selection clause "would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *S.K.I. Beer Corp.*, 612 F.3d at 711. Plaintiff may bring his FLSA claims in state court. New York law applies to his NYLL claims in both state and federal court. Thus, Plaintiff will not be deprived of any substantive rights by litigating in state court, let alone be "deprived of his day in court" due to any "grave inconvenience or unfairness" there. *Id*.

Without citation to any legal precedent, Plaintiff argues only that enforcement of the Employment Agreement would be unreasonable and unjust because he could not pursue NYLL recordkeeping violations as a class action pursuant to New York's class action statute. Opp'n at 8. As discussed above, this argument has no basis in law as both New York state and federal case law from this circuit have found such forum selection clauses valid, notwithstanding the possibility that Plaintiff may not be able to pursue his case as a class action, particularly since his rights to pursue

his own claims are not affected.  Plaintiff otherwise does not assert, nor can he, that adjudicating disputes in state court would be fundamentally unfair, inconvenient, or against public policy.  *Id*.

To the extent Plaintiff contends that there was no "meeting of the minds" due to fraud or overreaching, this argument also lacks merit.  Opp'n at 2, 8.  Courts in this circuit have held repeatedly that allegations relating to "fraudulent inducement of the contract as a whole are insufficient to invalidate a forum selection clause" and, instead, a plaintiff "must allege fraudulent inducement with respect *to the clause itself*." *Thibodeau*, 2008 WL 4849957 at \*6 (emphasis added); *See also*, *CDS Bus. Servs. Inc. v. Sebbag*, 2022 WL 18562630, at \*5 (E.D.N.Y. Dec. 16, 2022) (finding allegations that the signatory "felt pressured . . . at the 'eleventh hour' to execute and deliver" the contract were insufficient because the resisting party did not "show that the forum selection clause itself was the product of fraud, coercion, or overreaching"); *Arkay Packaging Corp. v. W.R. Chestnut Engineering, Inc*., 1997 WL 1068673, at \*2 n.2 (E.D.N.Y. Jul. 21, 1997) (forum selection clause was valid where the alleged fraud did not relate specifically to the inclusion of the clause in the contract); *Stamm v. Barclays Bank of NY*, 960 F. Supp. 724, 729 (S.D.N.Y. Mar. 26, 1997) (explaining that a "claim of fraud in the inducement of a contract is insufficient" to invalidate a forum selection clause, and that it is "the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud").  Thus, Plaintiff has failed to rebut the presumption of validity of the Employment Agreement and is subject to the forum selection clause contained therein.

# # # #

**A65**

**CONCLUSION**

For the reasons set forth above, as the Court finds the forum selection clause valid and enforceable, Defendants' motion to dismiss is granted without prejudice to refiling in New York State Supreme Court, Kings County and the Court need not reach Defendants' motion to compel mediation and arbitration.

SO ORDERED.

Dated: Brooklyn, New York
      March 27, 2024

/s/
_____
DORA L. IRIZARRY
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MIKHAIL MEEROVICH,

                                               JUDGMENT
              Plaintiff,                    22-cv-7625(DLI)(LB)

     v.

BIG APPLE INSTITUTE INC., and
BRONISLAV LEYDIKER,

                    Defendants.
-------------------------------------------------------------X

     A Memorandum and Order of Honorable Dora L. Irizarry, United States District Judge,

having been filed on March 27, 2024, granting Defendants' motion to dismiss without prejudice

to refiling in New York State Supreme Court, Kings County; it is

     ORDERED and ADJUDGED that Defendants' motion to dismiss is granted without

prejudice to refiling in New York State Supreme Court, Kings County and the Court need not

reach Defendants' motion to compel mediation and arbitration.

Dated: Brooklyn, New York               Brenna B. Mahoney
       March 28, 2024                 Clerk of Court

                                 By:     /s/Jalitza Poveda
                                       Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MIKHAIL MEEROVICH,

                    Plaintiff,

       -against-

BIG APPLE INSTITUTE INC., and
BRONISLAV LEYDIKER,

                    Defendants.

-----------------------------------------------------------------X

**Case No.: 1:22-cv-7625 (DLI) (LB)**

**NOTICE OF APPEAL**

     Notice is hereby respectfully given that Mikhail Meerovich, the Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the Memorandum and Order of the Hon. Dora L. Irrizary, U.S.D.J. ("Judge Irrizary") dated March 27, 2024 in its entirety.

  Dated: Jamaica, New York
       April 25, 2024

                            Respectfully submitted,
                            **SAGE LEGAL LLC**
                            By:  */s/ Emanuel Kataev, Esq.*
                            Emanuel Kataev, Esq.
                            18211 Jamaica Avenue
                            Jamaica, NY 11423-2327
                            (718) 412-2421 (office)
                            (917) 807-7819 (cellular)
                            (718) 489-4155 (facsimile)
                            emanuel@sagelegal.nyc

                            *Attorneys for Plaintiff*
                            *Mikhail Meerovich*

**VIA ECF**
Sitaris & Associates, PLLC
<u>Attn</u>: George Sitaris & Gerasimos D. Liberatos, Esqs.
200 Liberty Street, 27th Floor
New York, NY 10281-0006
george@sitaraslaw.com
liberatos@sitaraslaw.com

*Attorneys for Defendants*
*Big Apple Institute Inc.*
*and Bronislav Leydiker*