# 24-1149-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MIKHAIL MEEROVICH,

*Plaintiff-Appellant,*

*v.*

BIG APPLE INSTITUTE, INC.,
BRONISLAV LEYDIKER,

*Defendants-Appellees.*

———————————————

*On Appeal from the United States District Court
for the Eastern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

Emanuel Kataev
SAGE LEGAL LLC
*Attorneys for Plaintiff-Appellant*
18211 Jamaica Avenue
Jamaica, New York 11423
(718) 412-2421
emanuel@sagelegal.nyc



## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure (hereinafter "App. Rules" or "App. Rule"), the undersigned counsel of record for the Defendant-Appellee, KP NY OPERATIONS LLC ("KPNY"), states that there are two (2) parent corporations, Kailash Parbat Restaurants Private Limited and Kailasa Specialty Cuisine Private Limited (both foreign corporations duly formed under the laws of the country of India), but that there are no publicly held corporations, which own 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................i

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...............................................................1

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE .................................................................2

SUMMARY OF THE ARGUMENT ..........................................................7

STANDARD OF REVIEW ....................................................................8

ARGUMENT ......................................................................................10

    POINT I

    THE AGREEMENT EXPIRED AND WAS THUS
    UNENFORCEABLE .....................................................................10

    POINT II

    THE COURT ABUSED ITS DISCRETION IN
    ENFORCING THE AGREEMENT ..................................................12

    POINT III

    EVEN IF VALID, THE AGREEMENT WAS
    THE PRODUCT OF OVERREACHING ..........................................15

CONCLUSION ..................................................................................16

CERTIFICATE OF COMPLIANCE .......................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aenergy, S.A. v. Republic of Angola,
    31 F.4th 119 (2d Cir. 2022)......................................................................8

Asoma Corp. v. SK Shipping Co., Ltd.,
    467 F.3d 817 (2d Cir. 2006)......................................................................8

Bennett v. Sterling Planet, Inc.,
    No. 09-CV-1176, 2010 WL 11566003
    (N.D.N.Y. Mar. 22, 2010)......................................................................15

City of New York v. Golden Feather
    Smoke Shop, Inc.,
    597 F.3d 115 (2d Cir. 2010)......................................................................9

Evolution Online Sys., Inc. v. Koninklijke
    PTT Nederland N.V.,
    145 F.3d 505 (2d Cir. 1998)....................................................................14

Farricker v. Penson Dev., Inc.,
    No. 07 CIV. 11191 (DAB), 2009 WL 860239
    (S.D.N.Y. Mar. 31, 2009) ................................................................11, 12

Fracasse v. People's United Bank,
    747 F.3d 141 (2d Cir. 2014)......................................................................1

In Design v. Kmart Apparel Corp.,
    1991 U.S. Dist. LEXIS 6404
    (S.D.N.Y. May 14, 1991)........................................................................11

Jelich v. Warner Bros.,
    No. 95 CIV. 10016 (LLS), 1996 WL 209973
    (S.D.N.Y. Apr. 30, 1996)........................................................................16

Laspata DeCaro Studio Corp. v. Rimowa GmbH,
    No. 16 CIV. 934 (LGS), 2017 WL 1906863
    (S.D.N.Y. May 8, 2017) ............................................................................14

Lexington Investment Co. v. Southwest Stainless, Inc.,
    697 F. Supp. 139 (S.D.N.Y. 1988) .............................................................15

Magi XXI, Inc. v. Stato della Citta del Vaticano,
    714 F.3d 714 (2d Cir. 2013) .........................................................................9

Martinez v. Bloomberg LP,
    740 F.3d 211 (2d Cir. 2014) .........................................................................8

Nelson v. Master Lease Corp.,
    759 F. Supp. 1397 (D.Minn. 1991) .............................................................15

New Moon Shipping Co., Ltd. v. MAN B
    & W Diesel AG,
    121 F.3d 24 (2d Cir. 1997) .........................................................................13

Norex Petroleum Ltd. v. Access Indus., Inc.,
    416 F.3d 146 (2d Cir. 2005) .........................................................................8

PaineWebber Inc. v. Bybyk,
    81 F.3d 1193 (2d Cir. 1996) .......................................................................13

Phillips v. Audio Active Ltd.,
    494 F.3d 378 (2d Cir. 2007) .........................................................................8

Rabinowitz v. Kelman,
    75 F.4th 73 (2d Cir. 2023) .....................................................................8, 10

Scott v. Guardsmark Security,
    874 F. Supp. 117 (D.S.C.1995) ..................................................................15

Starke v. SquareTrade, Inc.,
    913 F.3d 279 (2d Cir. 2019) .................................................................12, 13

Success Sys., Inc. v. CRS, Inc.,
    No. 3:21-CV-1391 (SVN), 2023 WL 2742344
    (D. Conn. Mar. 31, 2023) ...........................................................................14

iv

Zervos v. Verizon N.Y., Inc.,
   252 F.3d 163 (2d Cir. 2001)..................................................................9

**Statutes**

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

29 U.S.C. § 201, *et seq.*...............................................................................1

New York Labor Law § 650, *et seq.*..........................................................1

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(3)...........................................*passim*

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiff Mikhail Meerovich (hereinafter "Meerovich" or the "Appellant") brought this case in the United States District Court for the Eastern District of New York against Defendants Big Apple Institute, Inc. (hereinafter "Big Apple" or the "Corporate Defendant") and Bronislav Leydiker (hereinafter "Leydiker" or the "Individual Defendant") (the Corporate Defendant and the Individual Defendant collectively hereinafter the "Appellees"), alleging that he was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL") § 650, *et seq.*, among other violations of the FLSA and NYLL.

The District Court's jurisdiction over this matter was conferred because the matter presented questions arising under federal law pursuant to 28 U.S.C. § 1331. See Fracasse v. People's United Bank, 747 F.3d 141 (2d Cir. 2014).

The District Court (Irrizary, J.) granted Appellees' motion to dismiss Appellant's complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), but analyzed the motion as one for dismissal based on *forum non conveniens*. (A51-A65). Final judgment was entered on March 28, 2024. (A66). Appellant timely filed his Notice of Appeal on April 25, 2024 as an appeal of right pursuant to 28 U.S.C. § 1291. (A67).

1

## STATEMENT OF ISSUES

(1)    Whether the Court below erred in granting Appellee's motion to dismiss based on improper venue and/or based on *forum non conveniens*; and

(2)    Whether the Court below abused its discretion in granting Appellee's motion to dismiss based on improper venue and/or based on *forum non conveniens* without conducting an evidentiary hearing.

## STATEMENT OF THE CASE

On December 15, 2022, Appellant commenced a case in the United States District Court for the Eastern District of New York asserting claims under the FLSA and NYLL for unpaid overtime wages and related relief.  (A2, A26-A46).  A summons was issued by the Clerk of Court on December 20, 2022, and was returned executed on March 7, 2023.  (A3).  Appellees appeared by counsel on March 28, 2023.  (A3).

On May 12, 2023, Appellees moved to dismiss the Complaint pursuant to Rule 12(b)(3).   (A3, A6-A46).   Appellees' motion was supported by the declaration of Leydiker of the same date, who averred that he is a manager of Big Apple.  (A8 ¶¶ 1-2, A11).  Leydiker concedes that Appellant never entered into a written employment agreement (the "Agreement") upon hire in April 2017, but avers that Big Apple presented him with one in December 2018 in conjunction with an offer of a "regular full-time position."  (A9 ¶¶ 7-8).

Leydiker declared that he personally met with Appellant to explain he would be required to sign the Agreement if he accepted the position. (A9 ¶ 9). Leydiker declared that Appellant took the agreement with him and returned it signed "after the holiday recess." (A9 ¶ 10).

The Agreement is titled "Support Staff Employment Agreement Between The Big Apple Institute, Inc And *Mikhail Meerovich* For the 20*18*-20*19*[1] school year." (A13). It provides that "[Big Apple] hereby employs the [Appellant] as its cook-assistants [*sic*], and the [Appellant] hereby agrees to serve in such capacity, for the period beginning *1 1*, 20*19* ('Start Date'), and ending one (1) year thereafter ('End Date'), and subject to paragraphs6 [*sic*] and 7 herein ('Employment Period')." (A14 § 1). Thus, by its terms, it expired on January 1, 2020.

The Agreement also provides that "[e]ach year, [Big Apple] shall have the right, in its sole discretion, to renew this Agreement for a renewal term of one year. In the event this Agreement is renewed, all of the terms, covenants, and conditions of this Agreement shall continue in gull [*sic*] force and effect." (A18 § 7). Critically, the renewal provision is not automatic, and the Agreement provides that it "may be changed only by an agreement in writing signed by the party against whom any waiver, change, amendment, modification, or discharge is sought." (A22 § 23). Appellees concede that there is no other signed writing. (A9 ¶ 11).

---

[1] Italicized text is set forth in handwriting rather than typed text in the Agreement. (A13). This formatting controls throughout the instant section.

The Agreement further provides, in pertinent part, that all disputes between the parties be submitted first to mediation, as a condition precedent to binding arbitration, and that any action or proceeding that is brought in court shall be submitted to the Supreme Court of the State of New York, Kings County. (A10 ¶¶ 14-15, A20-A21 §§ 18-19).

Leydiker declared that Appellant speaks Russian and English, and communicated regularly in both languages. (A8 ¶ 4).

On June 26, 2023, Appellant opposed the motion. (A4, A47-A50). Appellant submitted a sworn declaration in opposition. (Id.). Meerovich explained that he is fully fluent in Russian but that his English is basic and rudimentary, such that while he can communicate in English, he is unable to read and understand a contract. (A47 ¶¶ 4-6).

Meerovich denies being approached by Leydiker in December 2018 with the Agreement, and disputes that he was hired on a part-time or temporary basis, asserting instead that he worked full-time since he commenced an employment relationship with the Appellees. (A48 ¶ 7-8). Meerovich declares that he met with a woman who worked for Appellees, whose name is Alla, and who worked in the bookkeeping office. (A48 ¶ 9). Meerovich explained that he recalled that employees were called in to meet with Alla, one by one, and that the employees were not addressed in a group. (A48 ¶¶ 10-11).

When Meerovich met with Alla, the entire meeting took approximately three (3) minutes and was very rushed; Alla spoke to Meerovich only in Russian, not English. (A48 ¶ 12). Alla informed Meerovich that his hours were going to decrease from eight (8) hours per day to 7.4 hours per day, but that Meerovich's pay would not be affected. (A48 ¶¶ 13-14). She did not explain any of the other terms of the Agreement.

After Alla informed Meerovich of the foregoing, she directed him to fill items in on the spot, and Meerovich was given no opportunity to review the Agreement. (A48 ¶¶ 15-16). Meerovich declared that it was effectively implied that he cannot keep his job unless he signs the documents then and there, which he was requested to do. (A48 ¶ 16).

Setting aside the fact that Meerovich denies ever meeting with Leydiker about the Agreement, Meerovich expressly denies that Leydiker ever informed him that he can take the Agreement home with him to review it, that he was free to have the Agreement reviewed by an attorney before signing it, or that if the Agreement was acceptable, Meerovich should sign it and return it to him after the holiday recess. (A48-A49 ¶¶ 17-18).

Meerovich reiterates that he was given no time whatsoever to review the Agreement and that he would lose his job unless he signed it right away. (A49 ¶ 19).

He further declares that neither Leydiker nor Alla discussed the full contents of the Agreement with him in Russian, nor was it translated for him; there was no explanation as to what the Agreement contained, only that "this is the work agreement," or words to that effect. (A49 ¶¶ 20-21). Critically, Meerovich declares that he was given no chance to read nor understand the terms of the Agreement, and that – had he been afforded an opportunity to do so – he would have attempted to at least negotiate its terms prior to signing it. (A49 ¶¶ 24-25).

On March 27, 2024, the court below issued its Memorandum & Order dismissing the complaint without prejudice to refiling in the Supreme Court of the State of New York, Kings County, and declined to reach the Appellees' motion to compel mediation and arbitration in light of same. (A51-A65).

The court below interpreted the Appellees' motion as one for dismissal based on *forum non conveniens* notwithstanding the fact they framed it pursuant to Rule 12(b)(3) for improper venue. (A54-A55). The court below correctly noted that all disputed facts are to be resolved in favor of Meerovich, and that no disputed fact should be resolved against Meerovich absent an evidentiary hearing, which is to be held within the sound discretion of the district court. (A55).

The court below found that Meerovich's declaration consists of bald assertions that Appellees engaged in high pressure tactics, while Leydiker's declaration provides facts contradicting Meerovich's version of events. (A55).

6

Notwithstanding the foregoing, the court below found that an evidentiary hearing is unnecessary because the forum selection clause is valid and enforceable as a matter of law. (A55). The court below then analyzed the validity of the forum selection clause without regard to the fact that Meerovich never had an opportunity to review the Agreement in order to assent to any of its terms, including the forum selection clause. (A55-A65).

## SUMMARY OF THE ARGUMENT

The lower court erred in enforcing the Agreement because it expired by its terms and there was no subsequent writing extending the term of the Agreement, as required by modification/merger clause in the Agreement.

Even were this Court to find that the Agreement was renewed (which it was not), the lower court erred in analyzing the validity of the forum selection clause without first analyzing whether the parties entered into a binding contract. Based on the facts most favorable to the Appellant, no meeting of the minds could have occurred given the circumstances under which the agreement was signed: (i) Meerovich was unable to read the terms of the Agreement himself; (ii) Alla misrepresented and/or omitted the material terms of the Agreement, focusing solely on the compensation and hours without regard to all the other critical terms therein; and (iii) Meerovich was not given any opportunity to review the Agreement himself or have it translated, as he was required to sign it on the spot.

In light of the foregoing, the lower court erred in granting the motion to dismiss based on *forum non conveniens*.

## STANDARD OF REVIEW

A motion to dismiss based on a forum selection clause is reviewed *de novo*, except where the decision is based on factual findings, which is reviewed for clear error. See Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014) (citing Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006); see also Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007) ("Where the district court has relied on pleadings and affidavits to grant a Rule 12(b)(3) motion to dismiss on the basis of a forum selection clause, our review is *de novo*").

More recently, this Court has held that when a district court dismisses a case under ordinary *forum non conveniens* principles, it reviews the district court's decision for abuse of discretion. See Rabinowitz v. Kelman, 75 F.4th 73, 81–82 (2d Cir. 2023) (citing Aenergy, S.A. v. Republic of Angola, 31 F.4th 119, 128 (2d Cir. 2022)). "A district court abuses its discretion in granting a *forum non conveniens* dismissal when its decision (1) rests either on an error of law or on a clearly erroneous finding of fact, or (2) cannot be located within the range of permissible decisions, or (3) fails to consider all the relevant factors or unreasonably balances those factors." See Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (internal quotation marks omitted).

Under the general abuse of discretion standard, a district court "does not receive equal deference to every aspect of its decision." See City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 120 (2d Cir. 2010) (cleaned up).

The strongest deference (clear error review) is accorded where the district court has a distinct institutional advantage over a reviewing court—namely, in factfinding, which often turns on evaluating the credibility of witnesses or choosing among competing factual inferences from case-specific evidence. No deference at all is provided on legal questions, where an appellate court is equally well equipped to provide answers and there is a greater need for uniformity of interpretation across different cases. And a flexible amount of deference is provided where a district court is "vested with discretion as to a certain matter," such as balancing competing factors. See Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 168-69 (2d Cir. 2001) (noting that a "species of deferential appellate review" applies when a district court "is not required by law to make a particular decision," and instead "empowered to make a decision—of its choosing—that falls within a range of permissible decisions"). "[F]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances or unless the forum selection clause was invalid for such reasons as fraud or overreaching." See Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720-21 (2d Cir. 2013).

9

A forum-selection clause is enforced under Second Circuit precedent unless "(1) its incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of [its] day in court." <u>See</u> <u>Rabinowitz v. Kelman</u>, 75 F.4th 73, 81 n.6 (2d Cir. 2023) (internal quotation marks omitted).

For the reasons set forth below, the court below erred in granting dismissal based on *forum non conveniens*. Accordingly, the March 27, 2024 Order should be reversed.

## ARGUMENT

## POINT I

## THE AGREEMENT EXPIRED AND WAS THUS UNENFORCEABLE

The Agreement was signed on January 1, 2019 and was valid for a term of one (1) year, subject to renewal by Big Apple in its sole discretion. (A18 § 7). The Agreement provides that it may be changed "only by an agreement in writing signed by the party against whom any waiver, change, amendment, modification or discharge is sought." (A22 § 23). By its terms, the Agreement did not automatically renew, and the Appellees failed to provide any evidence that it had been renewed.

Indeed, Leydiker only declares in conclusory fashion that the "term of the Agreement was extended pursuant to Section 7 of the Agreement" while conceding that "Big Apple did not enter into any new, subsequent or other employment agreement or arrangement with Mr. Meerovich." (A9 ¶ 11). Since there was no subsequent signed writing, the Agreement was incapable of having its term extended beyond the one year term set forth within.

In such circumstances, courts have concluded that agreements are not automatically renewed. See, e.g., Farricker v. Penson Dev., Inc., No. 07 CIV. 11191 (DAB), 2009 WL 860239, at *6 (S.D.N.Y. Mar. 31, 2009) ("By its terms, the Written Agreement expired on July 30, 2005, and Plaintiff does not claim that Defendant exercised its option to renew the Written Agreement by providing Plaintiff with the requisite notice of such renewal in writing. Although in some cases the parties may orally agree to renew a contract despite a requirement of written renewal, see In Design v. Kmart Apparel Corp., 1991 U.S. Dist. LEXIS 6404 (S.D.N.Y. May 14, 1991), the Written Agreement expressly provided that no term may be waived or amended unless in writing executed by both parties. The Court concludes that, contrary to Plaintiff's arguments otherwise, the Written Agreement did not automatically renew each year"). This Court should similarly hold as much here.

Just like in <u>Farricker</u>, the Agreement expired by its terms on January 1, 2020 and was not renewed because – as Appellees concede in Leydiker's sworn statement – there is no other agreement. As such, because the Agreement provides that no change, amendment, or modification may be made without a signed writing, the Agreement expired and was no longer in effect since January 1, 2020.

## POINT II

### THE COURT ABUSED ITS DISCRETION IN ENFORCING THE AGREEMENT

Even if the Agreement was somehow automatically renewed (it was not), the court below erred in finding that Meerovich entered into the Agreement by virtue of his signing it, given his sworn declaration that he was given only minutes to do so, with no opportunity to review (let alone understand) it, under pain of ostensibly losing his job. There can be no meeting of the minds sufficient to create an agreement under these circumstances. Because the court below analyzed the validity of the forum selection clause in a vacuum without assessing whether the parties entered into an agreement, this Court should vacate the dismissal. "It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.' The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." See <u>Starke v. SquareTrade, Inc.</u>, 913 F.3d 279, 288-89 (2d Cir. 2019) (citations omitted).

The key question is whether a reasonably prudent person would understand that he was agreeing to the incorporated terms. Id. at 294 n.1; see also PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996).

Here, while the lower court recognized that there were factual disputes about entering into the Agreement, it nonetheless enforced the forum selection clause without regard to the issues presented with respect to the validity of the agreement as a whole. The record demonstrates that there are issues of fact as to: (i) whether Leydiker ever met with Meerovich or discussed the Agreement with him; (ii) whether Leydiker or Alla presented the Agreement to Meerovich; (iii) the amount of time Meerovich had to review the Agreement; (iv) the statements made to Meerovich about the Agreement; (v) the use of high pressure tactics to have Meerovich sign the Agreement; and (vi) whether Meerovich understood the terms of the Agreement.

As an initial matter, under such circumstances, an evidentiary hearing was warranted. See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) ("if there are disputed material facts, the court *must* hold an evidentiary hearing to provide the plaintiff the opportunity to be heard if it is to resolve factual disputes in favor of the defendant") (emphasis added). Setting that issue aside, and more importantly, in order to enforce the forum selection clause, there had to be a finding that the parties validly entered into the Agreement.

Indeed, courts routinely turn first to the threshold issue of contract formation to determine whether an agreement is valid before making a finding as to whether a forum selection clause is enforceable. See, e.g., Success Sys., Inc. v. CRS, Inc., No. 3:21-CV-1391 (SVN), 2023 WL 2742344, at *9 (D. Conn. Mar. 31, 2023) (the Court finds that the EULA did not constitute an agreement between CRS and Success and, therefore, its forum selection clause does not mandate that Success' claims be litigated in Minnesota) (citing Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 509 (2d Cir. 1998) (vacating dismissal predicated on forum selection clause where district court did not first conclude that a contract was formed between the parties); see also Laspata DeCaro Studio Corp. v. Rimowa GmbH, No. 16 CIV. 934 (LGS), 2017 WL 1906863, at *3 (S.D.N.Y. May 8, 2017) ("Although not framed as such by either party, the issue of whether their agreement incorporates the forum selection clause is a threshold issue of contract formation that must be resolved before addressing whether the clause is enforceable as to the crossclaims")).

Here, for the very simple reason that there was no meeting of the minds given the rushed and inappropriate way in which Meerovich was presented with the Agreement, there could be no meeting of the minds.

Accordingly, the forum selection clause and the Agreement itself are unenforceable.

## POINT III

### EVEN IF VALID, THE AGREEMENT WAS THE PRODUCT OF OVERREACHING

Even if the Agreement had not expired (which it did), and was valid and binding (which it is not), the forum selection clause must not be enforced because of overreaching. This is because Meerovich was presented with the Agreement by Big Apple, who misrepresented and/or omitted its key terms in explaining it, then directed him to sign without giving him an opportunity to review it.

A clause which is the result of coercion or overreaching is not enforceable. See Lexington Investment Co. v. Southwest Stainless, Inc., 697 F. Supp. 139, 143 (S.D.N.Y. 1988). Forum selection clauses may be unenforceable if a party against whom it is enforced was "the victim of fraud or overreaching; ... was coerced into signing; ... was denied the opportunity to seek legal advice ...; or if the contract is somehow unconscionable." See Bennett v. Sterling Planet, Inc., No. 09-CV-1176 (GLS/DRH), 2010 WL 11566003, at *5 (N.D.N.Y. Mar. 22, 2010).

The concept of overreaching is especially important in this case, as Meerovich was a rank-and-file employee with zero bargaining power. See Scott v. Guardsmark Security, 874 F. Supp. 117, 120 (D.S.C.1995) (distinguishing between arm's-length relationship between businesspeople and employer-employee relationship); see also Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1402 (D.Minn. 1991) (same).

Where an employee is not given an opportunity to negotiate the terms of an agreement and is coerced into signing it, courts have held that the forum selection clause is unenforceable. See Jelich v. Warner Bros., No. 95 CIV. 10016 (LLS), 1996 WL 209973, at *2 (S.D.N.Y. Apr. 30, 1996) ("Jelcich has met her burden of showing that she had no ability to bargain over the terms of the Contract and that Warner coerced her into signing it").

Based on the facts present here, this Court should make a similar finding, and decline to enforce the forum selection clause against Meerovich.

## CONCLUSION

For all of the foregoing reasons, the Appellant's appeal must be granted with the Order of the court below vacated.

Dated: Jamaica, New York
    August 8, 2024

Respectfully submitted,

**SAGE LEGAL LLC**

  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff-Appellant*
*Mikhail Meerovich*

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6)

This brief has been scanned for viruses and no virus was detected.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of App. Rule 32(a)(7)(B).

This brief contains 3,657 words, excluding the parts of the brief exempted by App. Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of App. Rule 32(a)(5) and the type style requirements of App. Rule 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 14 point Times New Roman.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Jamaica, NY
This 8th day of August 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Jamaica, NY
This 8th day of August 2024