# 24-1149-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

MIKHAIL MEEROVICH,

*Plaintiff-Appellant,*

— v. —

BIG APPLE INSTITUTE, INC., BRONISLAV LEYDIKER,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## SUPPLEMENTAL APPENDIX

GEORGE SITARAS
SITARAS & ASSOCIATES, PLLC
*Attorneys for Defendants-Appellees*
200 Liberty Street, 27th Floor
New York, New York 10281
(212) 430-6410

CP COUNSEL PRESS    (800) 4-APPEAL • (334146)

i

# TABLE OF CONTENTS

**Page**

Memorandum of Law, by Defendants Big Apple
  Institute Inc. and Bronislaw Leydiker, in Support
  of their Motion to dismiss the Complaint, dated
  May 12, 2023 ........................................................   SA-1

Memorandum of Law, by Plaintiff, in Opposition to
  Defendants Big Apple Institute Inc. and
  Bronislaw Leydiker's Motion to dismiss the
  Complaint, dated June 26, 2023 ...........................   SA-22

Reply Memorandum of Law, Defendants Big Apple
  Institute Inc. and Bronislaw Leydiker, in Further
  Support of their Motion to dismiss the
  Complaint, dated July 25, 2023 ............................   SA-31

SA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIKHAIL MEEROVICH,                                          Case No. 1:22-cv-07625

                    Plaintiff,

      -against-

BIG APPLE INSTITUTE INC., and
BRONISLAV LEYDIKER,

                    Defendants.

---

**DEFENDANTS BIG APPLE INSTITUTE INC. and
BRONISLAV LEYDIKER'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

**SITARAS & ASSOCIATES, PLLC**
*Attorneys for Defendants*
*Big Apple Institute, Inc. and*
*Bronislav Leydiker*
200 Liberty Street, 27th Floor
New York, New York 10281
Tel. (212) 430-6410   Fax (917) 677-8276

SA-2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... i-iv

PRELIMINARY STATEMENT ………................................................................... 1

FACTS ………........................................................................................................ 2

STANDARD OF REVIEW ………........................................................................ 4

ARGUMENT .......................................................................……….... 5

    I.  THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE BECAUSE THE VENUE CLAUSE OF THE AGREEMENT DESIGNATES THE NEW YORK SUPREME COURT, KINGS COUNTY, AS THE "EXCLUSIVE JURISDICTION" AND VENUE FOR ANY DISPUTES BETWEEN THE PARTIES………….…..….. 5

    II.  TO THE EXTENT THIS COURT DENIES DEFENDANTS' MOTION TO DISMISS THE COURT SHOULD STAY THIS ACTION AND COMPEL MEDIATION AND ARBITRATION BASED ON THE DISPUTE RESOLUTION PROCEDURES IN SECTION 18 OF THE AGREEMENT…………………………….......................... 11

CONCLUSION ...................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Allied Dynamics Corp. v. Kennametal, Inc.*,
    965 F. Supp. 2d 276 (E.D.N.Y. 2013) ............................................................. 5

*Asoma Corp. v. SK Shipping Co., Ltd.*,
    467 F.3d 817 (2d Cir. 2006) ........................................................................... 7

*AT&T Techs. v. Communs. Workers of Am.*,
    475 U.S. 643 (1986) ………........................................................................... 14

*B & R Supermarket, Inc. v. Visa Inc.*,
    No. 17-CV-02738 (MKB), 2021 U.S. Dist. LEXIS 184644 (E.D.N.Y. Sep. 27, 2021) .. 15

*Besera v. Høm*,
    No. 20-CV-3862 (ARR) (SJB), 2021 U.S. Dist. LEXIS 123566 (E.D.N.Y. July 1, 2021) ....................................................................................................... 13, 14

i

*Bright Kids NYC, Inc. v QuarterSpot, Inc.*,
    No. 1:20-cv-9172 (MKV), 2021 US Dist LEXIS 178867 (S.D.N.Y. Sep. 20, 2021) ....... 9

*Bynum v. Maplebear Inc.*,
    160 F. Sup. 3d 527 (E.D.N.Y. 2016) .............................................................. 12

*CA, Inc. v. Stonebranch, Inc.*,
    No. CV 12-5988 (SJF)(ARL), 2014 U.S. Dist. LEXIS 32165 (E.D.N.Y. Jan. 27, 2014)
.................................................................................................................. 7, 9

*Castro v. TCA Logistics Corp.*,
    No. 20-CV-2004(JS)(ARL), 2021 U.S. Dist. LEXIS 66117 (E.D.N.Y. Mar. 31, 2021)
................................................................................................................. 15

*CDS Bus. Servs. Inc. v. Sebbag*,
    No. 21-CV-1992 (JS) (ST), 2022 U.S. Dist. LEXIS 227033 (E.D.N.Y. Dec. 16, 2022) .. 5

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) .......................................................................... 11

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ............................................................................... 14

*Edme v. Internet Brands, Inc.*,
    968 F. Supp. 2d 519 (E.D.N.Y. 2013) ............................................................ 6

*Exxonmobil Oil Corp. v. TIG Ins. Co.*,
    44 F.4th 163 (2d Cir. 2022) ....................................................................... 12

*Feuer v. Stoler of Westbury, Inc.*,
    No. 20-CV-6094 (JMA) (JMW), 2021 U.S. Dist. LEXIS 199224 (E.D.N.Y. Oct. 15,
2021) ................................................................................................ 13, 14

*Global Seafood Inc. v. Bantry Bay Mussels Ltd.*,
    659 F.3d 221 (2d Cir. 2011) ......................................................................... 8

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ........................................................................ 4

*Key Restoration Corp. v. Union Theol. Seminary*,
    2014 N.Y. Slip. Op. 30437[U] (Sup. Ct. N.Y. Cty. 2014) ............................... 11

*Lahoud v. Document Techs. LLC*,
    No. 17-cv-1211 (PKC), 2017 U.S. Dist. LEXIS 188162 (S.D.N.Y. Nov. 14, 2017) ........ 5

*Laumann v. Nat'l Hockey League,*
    989 F. Supp. 2d 329 (S.D.N.Y. 2013) ............................................................... 14

*Magi XXI, Inc. v. Stato della Città del Vaticano,*
    714 F.3d 714 (2d Cir. 2013) .............................................................................. 6

*Maross Constr., Inc. v. Cent. NY Regional Transp. Auth.,*
    66 N.Y.2d 341 (1985) ...................................................................................... 11

*McAllister v Connecticut Renaissance, Inc.,*
    496 F App'x 104 (2d Cir 2012) ........................................................................ 12

*MCC Dev. Corp. v. Perla,*
    81 A.D.3d at 474 (1st Dep't 2011) ................................................................... 11

*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.,*
    2004 U.S. Dist. LEXIS 3508, 2004 WL 4217938 (S.D.N.Y. Mar. 5, 2004) .................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ............................................................................................ 11

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016) ............................................................................ 12

*Patterson v. Raymours Furniture Co.,*
    659 F. App'x 40 (2d Cir. 2016) ........................................................................ 15

*Phillips v. Audio Active, Ltd.,*
    494 F.3d 378 (2d Cir. 2007) ......................................................................... 7, 8

*Preston v. Ferrer,*
    552 U.S. 346 (2008) ........................................................................................ 11

*Roby v. Corp. of Lloyd's,*
    996 F.2d 1353 (2d Cir. 1993) ............................................................................ 6

*Silent Gliss Inc. v. Silent Gliss International Ltd.,*
    No. 22-CV-522 (EK)(MMH), 2023 U.S. Dist. LEXIS 22450 (E.D.N.Y. Feb. 9, 2023)
    ................................................................................................................ 12

*S.K.I. Beer Corp. v. Baltika Brewery,*
    612 F.3d 705 (2d Cir. 2010) ......................................................................... 6, 9

*Sutherland v. Ernst & Young LLP,*
    726 F3d 290 (2d Cir. 2013) ............................................................................ 16

*TIC Park Ctr. 9, Ltd. Liab. Co. v. Wojnar*,
No. 16-CV-4302 (ARR)(JO), 2016 U.S. Dist. LEXIS 142602 (E.D.N.Y. Oct. 14, 2016)
.................................................................................................................................... 11

*TradeComet.com LLC v. Google Inc.*,
647 F.3d 472 (2d Cir. 2011) ......................................................................... 6, 7

*Ujvari v. 1stdibs.com, Inc.*,
2017 U.S. Dist. LEXIS 148413 (S.D.N.Y. Sep. 13, 2017) ................................. 8

*Uni-Systems, LLC v United States Tennis Ass'n.*,
350 F. Supp. 3d 143 (E.D.N.Y. 2018) ............................................................. 4

*Weingrad v. Telepathy, Inc.*,
No. 05 Civ. 2024 (MBM), 2005 U.S. Dist. LEXIS 26952 (S.D.N.Y. Nov. 7, 2005) ...... 10

*WorldCrisa Corp. v. Armstrong*,
129 F.3d 71 (2d Cir. 1997) ............................................................................ 12

*Zaxcom, Inc. v. Lectrosonics, Inc.*,
No. 17-CV-3408 (NGG) (SJB), 2019 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 1, 2019)
...................................................................................................................... 4

**Statutes/Rules**

9 U.S.C. § 4 ............................................................................................................ 12

12 N.Y.C.R.R. §§ 146, et seq. .............................................................................. 1

28 U.S.C. § 1404 ................................................................................................... 5

29 U.S.C. § 201 et seq. ......................................................................................... 1

FLSA Section 16(b), 29 U.S.C. § 216(b) ......................................................... 2, 15

Fed. R. Civ. P. 12(b)(3) ................................................................................ 1, 4, 5, 6

New York Labor Law § 650 et seq. ...................................................................... 1

SA-6

**PRELIMINARY STATEMENT**

Defendants Big Apple Institute, Inc. ("Big Apple") and Bronislav Leydiker ("Leydiker") (collectively "Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss Plaintiff Mikhail Meerovich's ("Meerovich" or "Plaintiff") complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, compel arbitration pursuant to the Federal Arbitration Act ("FAA").

In the Complaint, Meerovich alleges violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), the New York Labor Law (§ 650 *et seq.*), and the New York Commissioner of Labor's Wage Order codified at 12 N.Y.C.R.R. §§ 146, *et seq.* In particular, Meerovich seeks relief based on the following allegations: (i) FLSA Overtime Wage Violations; (ii) NYLL Overtime Wage Violations; (iii) NYLL Failure to Notify; (iv) NYLL Failure to Keep Records; (v) NYLL Failure to Provide Spread of Hours Compensation; (vi) FLSA Pay Frequency; and (vii) NYLL Pay Frequency.

However, for the reasons set forth herein, the Complaint must be dismissed or, alternatively, Plaintiff must be compelled to mediate and arbitrate his claims based on the mediation and arbitration clause and class action waiver provisions contained in the "Support Staff Employment Agreement" Meerovich entered into with Big Apple dated January 1, 2019 (the "Agreement"). Article 18 of the Agreement requires that Plaintiff's claims asserted in this action are to be submitted first to mediation, as a condition precedent to binding arbitration before Judicial Arbitration and Mediation Services ("JAMS"). Article 19 of the Agreement provides that the Supreme Court of the State of New York, County of Kings is the "exclusive jurisdiction and venue" over any claims arising out or

1

SA-7

relating to the Agreement or the relationship between the parties. (Leydiker Decl., Ex. A, Art. 19).

By commencing this action on behalf of himself and all non-exempt employees employed by Big Apple pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), Meerovich violated Articles 18 and 19 of the Agreement, and therefore, the Complaint must be dismissed in its entirety for improper venue or, in the alternative, Meerovich must be compelled to mediate and then arbitrate his claims.

## FACTS

1.      Big Apple is a New York not-for-profit school founded in 1996 (Leydiker Decl., at ¶ 3).

2.      Big Apple primarily serves low-income immigrant populations from Russia, Ukraine and other Eastern European communities that have made Brooklyn their home (Leydiker Decl., at ¶ 4).

3.      Meerovich is a former employee of Big Apple who worked as an assistant cook in Big Apple's cafeteria from April 1, 2017, to December 16, 2020 (Complaint, at ¶ 19).

4.      Meerovich speaks and understand both Russian and English and communicated with Big Apple in both languages on a regular basis (Leydiker Decl., at ¶ 4).

5.      When he was initially hired in April 2017 it was on a temporary basis to fill a position that had opened up. Later, in December 2018, Big Apple offered Meerovich a regular position starting in January 2019, for one year, pursuant to the Agreement (Leydiker Decl., at ¶ 7-8).

2

6.      Article 18 of the Agreement is an arbitration clause, which provides as follows:

> The Employer and Employee agree to submit to all other disputes, controversies, and claims arising out of or relating to this Agreement and/or the Employee's relationship with the Employer, including, but not limited to, claims arising under the New York Labor Law, Fair Labor Standards Acts . . . to binding arbitration before Judicial Arbitration and Mediation Services (JAMS), or its successor.
>
> *      *      *
>
> The Employee hereby waives any rights the Employee may have to assert and claims or causes of action it may have against the Employer in connection with any Disputes as a class action, or join in any class action …. The parties agree that they shall submit to non-binding mediation before JAMS as a condition precedent to arbitration, and if the matter is not resolved through mediation, then it shall be submitted to JAMS, or its successor, for final and binding arbitration….

(Ex. A, Art. 18)(emphasis added).

7.      Article 19 of the Agreement is a forum selection clause, which provides as follows:

> This Agreement shall be construed in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. **The parties agree that the Supreme Court of the State of New York, County of Kings, shall have exclusive jurisdiction over any suit, action or proceeding arising out of or relating to this Agreement. The Employee hereby agrees and consents to personal jurisdiction of the Courts of the State of New York, County of Kings, as the exclusive jurisdiction and venue for any disputes, controversies, or claims arising out of the relationship between the parties and this Agreement, and waives all defenses based on forum non-conveniens.**

(Ex A, Art. 19 (bold type in original).

8.      Meerovich was given time to review and ask questions about the Agreement prior to signing (Leydiker Decl., at ¶ 9-10).

3

9.      Leydiker informed Meerovich, in English and Russian, that he should consider reviewing the Agreement with an attorney before signing (Leydiker Decl., at ¶ 9).

10.     After meeting with Leydiker in December 2018, prior to the school's holiday recess, Meerovich took a copy of the Agreement with him, and returned a signed copy to Big Apple's financial office in January 2019 (Leydiker Decl., at ¶ 10).

11.     On December 16, 2020, Meerovich's employment was terminated for cause (Leydiker Decl., at ¶ 12).

12.     On December 15, 2022, Meerovich commenced this action seeking damages for the following violations: (i) FLSA Overtime Wage Violations; (ii) NYLL Overtime Wage Violations; (iii) NYLL Failure to Notify; (iv) NYLL Failure to Keep Records; (v) NYLL Failure to Provide Spread of Hours Compensation; (vi) FLSA Pay Frequency; and (vii) NYLL Pay Frequency (Complaint, at ¶¶ 60-103).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(3), the defendant may dismiss a claim based on improper venue. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(3), the plaintiff has the burden of demonstrating proper venue and "[i]f the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue, the court may "consider evidence outside the pleadings, regarding proper venue." *Uni-Systems, LLC v United States Tennis Ass'n.*, 350 F. Supp. 3d 143, 159 (E.D.N.Y. 2018); *see Zaxcom, Inc. v. Lectrosonics, Inc.*, No. 17-CV-3408 (NGG) (SJB), 2019 U.S. Dist. LEXIS 16975, 2 (E.D.N.Y. Feb. 1, 2019) (stating that, "[a] district court considering

SA-10

a Rule 12(b)(3) motion to dismiss for improper venue may also examine facts outside the complaint to determine whether its venue is proper"); *see also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 298 (E.D.N.Y. 2013).

Moreover, "[e]nforcement of a forum selection clause is an appropriate basis for a motion to dismiss pursuant to Rule 12(b)(3)." *CDS Bus. Servs. Inc. v. Sebbag*, No. 21-CV-1992 (JS) (ST), 2022 U.S. Dist. LEXIS 227033, 7 (E.D.N.Y. Dec. 16, 2022). When a forum selection clause is enforced and requires dismissal of a complaint, the Court "does not [need to] reach the defendants' alternative argument that [plaintiff's] claims must be resolved in arbitration." *Lahoud v. Document Tech. LLC*, No. 17-cv-1211 (PKC), 2017 US Dist LEXIS 188162, at *17-18 (S.D.N.Y. Nov. 14, 2017).

## ARGUMENT

### POINT I

**THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE BECAUSE THE VENUE CLAUSE OF THE AGREEMENT DESIGNATES THE NEW YORK SUPREME COURT, KINGS COUNTY, AS THE "EXCLUSIVE JURISDICTION AND VENUE" FOR ANY <u>DISPUTES BETWEEN THE PARTIES</u>**

Fed. R. Civ. P. 12(b)(3) provides that "a party may move to dismiss a complaint on grounds of improper venue [and] a defendant may enforce a forum selection clause by moving to dismiss, as opposed to filing a motion to transfer pursuant to 28 U.S.C. § 1404." *Lahoud v. Document Techs. LLC*, No. 17-cv-1211 (PKC), 2017 U.S. Dist. LEXIS 188162, 7 (S.D.N.Y. Nov. 14, 2017). In addition, when a "forum selection clause provides for venue in a state court, such a transfer would likely not be possible." *Lahoud*, 2017 US Dist LEXIS 188162, at *7-8 (*citing Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S.

Dist. LEXIS 3508, 2004 WL 4217938 (S.D.N.Y. Mar. 5, 2004)) (holding that "[r]emands aside, federal courts do not have the power to transfer a case to a state court.").

Forum selection clauses are *prima facie* valid and will be enforced unless the clause is unreasonable. *See Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 720-21 (2d Cir. 2013)(holding that "[f]orum selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances"); *quoting TradeComet.com LLC v. Google Inc.*, 647 F.3d 472, 475 (2d Cir. 2011)(affirming the district court's granting of a motion to dismiss, based on a forum selection clause, pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue). Forum selection clauses will be deemed to be unreasonable:

> (1) if their incorporation into the agreement was the result of fraud or overreaching;
> (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum;
> (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or
> (4) if the clauses contravene a strong public policy of the forum state.

*See S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010); *quoting Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993).

The Second Circuit considers three factors to determine whether a forum selection clause is presumptively enforceable: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause was mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519 (E.D.N.Y. 2013). If all three factors are satisfied, the court must consider the final inquiry, which is whether the resisting party has rebutted such presumption by making a "sufficiently strong showing" that

enforcement would be unreasonable or unjust, or that the clause was a result of fraud or overreaching. *See Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).[1]

Here, the forum selection clause in Article 19 of the Agreement is enforceable because it satisfies all three factors, and Meerovich has failed to plead any facts to suggest that enforcement would be unreasonable or unjust, or that it was the product of fraud or overreaching.

A. **The Forum Selection Clause Was Reasonably Communicated to Plaintiff**

A forum selection clause is "reasonably communicated" when it is stated in clear and straightforward language and presented in the main body of an agreement signed by the relevant party. For example, in *CA, Inc. v. Stonebranch, Inc.*, the Court held that "the [employment agreement] gave [defendant] both notice and an opportunity to reject the contract or the clause prior to executing it, and was therefore reasonably communicated to him." *CA, Inc.*, 2014 U.S. Dist. LEXIS 32165 at 11 (citing *Leviton Manuf. Co. v. Reeve*, 942 F. Supp. 2d 244, 264 [E.D.N.Y. 2013](finding that the forum selection clause was reasonably communicated where the party signed an agreement with a forum selection clause, and accordingly had an opportunity to review its contents). The Court also reasoned that "the provisions were divided into 16 delineated paragraphs, and the [forum selection] clause at issue was clearly set forth in Paragraph 16 entitled 'General.'"

Here, the forum selection clause was reasonably communicated because it was clearly set forth in bold font in Article 19 of the Agreement, which is divided into 23

---

[1] Although "the enforcement of a forum selection clause through a Rule 12(b) motion to dismiss is a well-established practice . . . neither the Supreme Court nor the Court of Appeals for the Second Circuit has 'specifically designated a single clause of Rule 12(b)' — or an alternative vehicle — 'as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause'" (*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472 (2d Cir. 2011) (*quoting Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 [2d Cir. 2006]).

delineated paragraphs with headings, with the forum selection clearly set forth in paragraph 19 within the main body of the Agreement **in bold** print. *See Ujvari v. 1stdibs.com, Inc.*, 2017 U.S. Dist. LEXIS 148413, 22 (S.D.N.Y. Sep. 13, 2017) (holding that a forum selection clause may be deemed "reasonably communicated" when the pertinent clause is "a standard section in the main body of [an] [a]greement signed by [plaintiff] and is phrased in both clear and unambiguous language…").

In addition, in Article 22 of the Agreement, Plaintiff represented, acknowledged, and agreed that he had an opportunity to review and consult with an attorney before entering into the Agreement, which is consistent with Leydiker's declaration that the Agreement was presented to Meerovich in December 2018, prior to the school's winter recess, and Meerovich signed and returned it the first week in January 2019 after the winter recess (Ex. A, Art. 22)(Leydiker Decl., at ¶ 8, 10).

Accordingly, the forum selection clause was reasonably communicated to Plaintiff.

**B. <u>The Forum Selection Clause is Mandatory</u>**

"[A] forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011), *quoting Phillips*, 494 F.3d at 386.

Here, the forum selection clause is clearly mandatory: "[t]he parties agree that the Supreme Court of the State of New York, County of Kings, **shall** have **<u>exclusive jurisdiction</u>** over any suit, action, or proceeding arising out of or relating to this Agreement" (Ex. A, Art. 19)(emphasis added). The use of the word "shall", when conferring "exclusive jurisdiction" to the Supreme Court of the State of New York, County

of Kings, is indicative that the clause is mandatory. *See CA, Inc.*, *supra* at 12 (finding that the language "shall be brought exclusively in the state or federal courts of the State of New York, County of County[*sic*]" was mandatory); *see also Bright Kids NYC, Inc. v QuarterSpot, Inc.*, No. 1:20-cv-9172 (MKV), 2021 US Dist LEXIS 178867, 7 (S.D.N.Y. Sep. 20, 2021) (stating "[a] clear expression of mandatory forum selection includes, for example, words such as 'shall,' 'sole,' and 'solely.'")

**C. The Claims and Parties Are Subject to the Forum Selection Clause**

The claims and parties are subject to the forum selection clause at issue, as Plaintiff, the "Employee," "agree[d] and consent[ed] . . . to exclusive jurisdiction and venue for *any* disputes, controversies, or claims arising out of the relationship between the parties and this Agreement" (Ex. A, Art. 19)(emphasis added).

As to defendant Leydiker, Plaintiff alleges that he is an "employer" within the meaning of the FLSA and New York Labor Law, and as such, Meerovich's claims against him arise from the employment relationship with Big Apple. Accordingly, the claims and parties are subject to the forum selection clause.

**D. Plaintiff Has Not Pled Any Facts to Support an Argument that Enforcement of the Forum Selection Clause is Unreasonable or Unjust**

Plaintiff has not pled any facts, nor can it demonstrate that enforcement of Article 19 would be unreasonable or unjust, or that the clause was a result of fraud or overreaching. Forum selections clauses similar to the one at bar are routinely enforced. *See S.K.I. Beer Corp.,* 612 F.3d 705 (2d Cir. 2010); *see also CA, Inc.*, *supra* at 11. In addition, it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound. *CA, Inc.*, *supra* at 14 (rejecting employee's argument that "he should not be bound by the forum selection clause because he was not

represented by counsel at the time he reviewed and signed the CA Employment Agreement …"); *See also, Weingrad v. Telepathy, Inc.,* No. 05 Civ. 2024 (MBM), 2005 U.S. Dist. LEXIS 26952, 4 (S.D.N.Y. Nov. 7, 2005) (concluding that the signatory "is bound by the terms of the forum selection clause even if he did not take the time to read it because a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed").

Here, the complaint is void of any factual allegations that would suggest the Agreement was unjust, or the product of overreaching, and the evidence presented in the Declaration of Leydiker show the opposite. Plaintiff was presented with Big Apple's standard employment agreement as provided to every other employee (Leydiker Decl., at ¶ 8). Plaintiff had time to review the Agreement with an attorney prior to accepting Big Apple's offer of regular employment, for a one-year term (and renewals) and was given a copy of the Agreement weeks before Plaintiff signed and returned it (Leydiker Decl., at ¶ 8-10).

Furthermore, Article 22 of the Employment Agreement provided that Plaintiff "represents, acknowledges and agrees . . . that [he] understands all of [Plaintiff's] obligations under [the Employment] Agreement[,] . . . has read[*sic*] all of the terms and conditions of [the Employment] Agreement[,] and . . . [has] freely enter[ed] into [the Employment] Agreement."

As such, Plaintiff read, understood and agreed to be bound by all terms of the Agreement, including the forum selection clause, and had ample opportunity to consult with counsel before signing. Thus, the forum selection clause is valid and enforceable, and as such, Plaintiff's motion to dismiss for improper venue should be granted.

SA-16

**POINT II**

**TO THE EXTENT THIS COURT DENIES DEFENDANTS' MOTION TO
DISMISS THE COURT SHOULD STAY THIS ACTION AND COMPEL
MEDIATION AND ARBITRATION BASED ON THE DISPUTE RESOLUTION
<u>PROCEDURES IN ARTICLE 18 OF THE AGREEMENT</u>**

### A.  <u>Mediation is a Condition Precedent to Arbitration</u>

The New York Court of Appeals has recognized that parties who agree to arbitrate relinquish the right to litigate and may be compelled to arbitration.  *Maross Constr., Inc. v. Cent. NY Regional Transp. Auth.*, 66 N.Y.2d 341, 345 (1985). It is also well-established that where, as here, the parties agreed to mediation as a condition precedent to arbitration, the "failure to comply with [such] condition precedent requires dismissal of the complaint." *Key Restoration Corp. v. Union Theol. Seminary*, 2014 N.Y. Slip. Op. 30437[U], *7 (Sup. Ct. N.Y. Cty. 2014); *see MCC Dev. Corp. v. Perla*, 81 A.D.3d at 474 (1st Dep't 2011) ("Supreme Court correctly dismissed the complaint . . . on the ground that plaintiff failed to satisfy the contract's conditions precedent to commencing litigation").

### B.  <u>The Arbitration Clause is Valid and Binding</u>

It is well settled that there is a "strong federal policy in favor of arbitration[, which] requires courts to 'compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *TIC Park Ctr. 9, Ltd. Liab. Co. v. Wojnar*, No. 16-CV-4302 (ARR)(JO), 2016 U.S. Dist. LEXIS 142602, 13 (E.D.N.Y. Oct. 14, 2016), *quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Indeed, the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston*

11

*v. Ferrer*, 552 U.S. 346, 349 (2008). *See also See also McAllister v Connecticut Renaissance, Inc.*, 496 F App'x 104, 106 (2d Cir 2012).

Pursuant to the FAA, "parties can petition a federal district court for an order directing that 'arbitration proceed in the manner provided for in [an arbitration] agreement.'" *Silent Gliss Inc. v. Silent Gliss International Ltd.*, Docket No. 22-CV-522 (EK)(MMH), 2023 U.S. Dist. LEXIS 22450, 4-5 (E.D.N.Y. Feb. 9, 2023), *quoting* 9 U.S.C. § 4. When determining whether a dispute is arbitrable, courts consider: (1) whether the parties agreed to arbitrate; and (2) whether the arbitration clause covers the claims at issue. *Exxonmobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2022).

Since an agreement to arbitrate is a contract, "the threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Exxonmobil Oil Corp., supra* at 175 (*quoting Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Once the court finds that a valid and binding arbitration agreement exists covering the dispute, the court must stay the public proceedings and compel arbitration. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

In *Bynum v. Maplebear Inc.*, a former employee sued her former employer for alleged violations of FLSA. The Court found that "the employer was entitled to compel arbitration of the suit pursuant to the FAA . . . [and] the employee had a reasonable opportunity to examine and understand an arbitration clause included in the employment contract that she reviewed and signed." *See Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 529 (E.D.N.Y. 2016).

Here, the arbitration clause is valid and enforceable because it is conspicuously presented in a separately numbered section of the Agreement, entitled "Dispute

Resolution", and Meerovich had ample opportunity to review the Agreement with counsel, as he acknowledged in Article 22(f) and (g) of the Agreement.

Article 18 of the Agreement provides, in relevant part:

> The Employer and Employee agree to submit to all other disputes, controversies, and claims arising out of or relating to this Agreement and/or the Employee's relationship with the Employer, including, but not limited to, claims arising under the New York Labor Law, Fair Labor Standards Acts . . . to binding arbitration before Judicial Arbitration and Mediation Services (JAMS), or its successor.

(Ex. A, Art. 18).

While Leydiker is not a party to the agreement, the clause also applies to Leydiker because "non-signatories to an arbitration agreement can 'compel a signatory to that agreement to arbitrate a dispute.'" *See Feuer v. Stoler of Westbury, Inc.*, No. 20-CV-6094 (JMA) (JMW), 2021 U.S. Dist. LEXIS 199224, 8 (E.D.N.Y. Oct. 15, 2021) (finding that non-signatories in an employment context can compel arbitration), *quoting Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010). This capability is due to the principle of equitable estoppel, which may be satisfied subject to the following two-step inquiry:

> (1) 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed,' and (2) there exists 'a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'

*Besera v. Høm,* No. 20-CV-3862 (ARR) (SJB), 2021 U.S. Dist. LEXIS 123566, 6 (E.D.N.Y. July 1, 2021)*; citing Ragone.*, 595 F.3d at 126-27.

Specifically, "[i]n the employment context . . . a relationship has been found where the non-signatory is a parent company, corporate successor, guarantor, or corporate affiliate of a signatory, or where the non-signatory was a co-employer with a signatory and the claims arose from the employment agreement containing an arbitration clause.'" *Feuer*, *supra* at 8-9, *quoting Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013).

Here, (1) the claims against Leydiker and the issues to be resolved are intertwined with the Employment Agreement and the employment relationship between Big Apple and the Plaintiff, and (2) Plaintiff alleges that Leydiker is a co-employer. "The Second Circuit has held that a plaintiff was estopped from avoiding arbitration with a non-signatory because she considered that entity her co-employer and knew at the time she signed the contract containing an arbitration clause that she would work directly with the non-signatory." *Besera*, 2021 U.S. Dist. LEXIS 123566 at 9, *citing Ragone*, 595 F.3d at 126-27. Indeed, the only reason Leydiker is named as a defendant is because he hired and terminated Meerovich in his capacity as a manager of Big Apple (Complaint, at ¶ 15).

Accordingly, Leydiker himself may compel arbitration under the Agreement.

**C.  The Dispute Falls Within the Scope of the Arbitration Clause**

Pursuant to the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 644 (1986). Moreover, when an agreement is clear, "it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534

U.S. 279, 282 (2002). *See also B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-02738 (MKB), 2021 U.S. Dist. LEXIS 184644 (E.D.N.Y. Sep. 27, 2021).

Here, Article 18 of the Employment Agreement expressly covers all disputes "arising out of or relating to this Agreement and/or the Employee's relationship with the Employer, including . . . claims arising under New York Labor Law, Fair Labor Standards Acts . . ." (Ex. A, Art. 18)(emphasis added). Meerovich's complaint alleges claims arising under the Fair Labor Standards Act and New York Law Labor, both of which are specifically covered by Article 18. Accordingly, Meerovich's claims fall within the scope of the arbitration provision.

### D. Plaintiff Has Waived His Right to Commence Collective Action

Under Article 18 of the Agreement, Plaintiff waived its right to bring a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b). *See Castro v. TCA Logistics Corp.*, No. 20-CV-2004(JS)(ARL), 2021 U.S. Dist. LEXIS 66117 (E.D.N.Y. Mar. 31, 2021) (upholding class action waiver in contract).

For example, in *Patterson v. Raymours Furniture Co.*, an employee brought a class and collective action based on the employer's alleged violations of the FLSA and NYLL. The District Court granted the employer's motion to compel arbitration, stating that the EAP's (Employment Arbitration Program) class action waiver was enforceable. *See Patterson v. Raymours Furniture Co.*, 659 F. App'x 40 (2d Cir. 2016)

Here, Article 18 of the Employment Agreement provides:

> The Employee agrees not to sue in court with respect to any Disputes and agrees not to bring any Disputes as a class action or seek to have any Disputes consolidated with any other action, proceeding, lawsuit or arbitration, it being agreed that any Disputes between the Employer and Employee will be heard in separate proceedings. The Employee hereby waives any rights the Employee may have to

SA-21

assert any claims or causes of action it may have against the Employer in connection with any Disputes as a class action, or join in any class action that may have been commenced by another person or entity against the Employer.

(Ex. A, Art. 18).

Accordingly, Plaintiff waived his right to commence a class action under the FLSA or NYLL against Defendants in the Agreement and commenced this action in violation of an unambiguous and enforceable waiver. *See Sutherland v. Ernst & Young LLP*, 726 F3d 290, 296 (2d Cir. 2013). Thus, such collective action and class action claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action for improper venue or, alternatively, compel arbitration.

Dated: New York, New York
      May 12, 2023

**SITARAS & ASSOCIATES, PLLC**

By: _____
    George Sitaras, Esq.
    Gerasimos D. Liberatos, Esq.
    200 Liberty Street 27th Floor
    New York, New York 10281
    Tel: (212) 430-6410
    *Attorneys for Defendants*
    *Big Apple Institute, Inc.*
    *Bronislav Leydiker*

16

SA-22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MIKHAIL MEEROVICH,

             **Case No.: 1:22-cv-7625 (DLI) (LB)**

      Plaintiff,

   -against-

BIG APPLE INSTITUTE INC., and
BRONISLAV LEYDIKER,

      Defendants.
-----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' TO DISMISS THE COMPLAINT OR COMPEL ARBITRATION</u>**


**AKILOV LAW, P.C.**

Mark Akilov, Esq.
147-44 Jewel Ave
Flushing, NY 11367
646-361-6274
MAkilov1@gmail.com

*Attorneys for Plaintiff*

SA-23

### PRELIMINARY STATEMENT

Defendants move to dismiss the complaint for improper venue or, in the alternative, to compel arbitration.  Defendants contend that Plaintiff signed an agreement requiring him to mediate, then arbitrate, his claims.  Defendants also argue that a venue provision requires that any disputes between the parties must be decided in the Supreme Court of the State of New York, County of Kings.  For the reasons set forth below, their motion must be denied.

As an initial matter, there was no meeting of the minds, as required, for the purported agreement to be enforceable.  As set forth in Plaintiff's declaration in opposition, Defendants hoodwinked the Plaintiff into signing by effectively threatening him he would lose his job unless he signed.[1]  Further, Defendants incorrectly explained that the agreement changes his hourly rate from $12.00 per hour to $13.00 per hour but simultaneously reduces his daily hours from eight (8) hours per day to 7.4 hours per day such that his salary effectively remained the same.  This constitutes, in each respect, a failure of consideration and frustration of purpose such that no valid agreement was formed.  Moreover, based on the substantive and procedural unconscionability cited above, it is evident that this agreement cannot be enforced.

Finally, the venue provision is unenforceable for the same reasons and because it both deprives Plaintiff of his statutory rights and is not conspicuous enough to satisfy the requirements under the law to constitute a valid mandatory forum selection clause.

Accordingly, Defendants' motion must be denied in its entirety, except that Plaintiff is prepared to mediate this case by and through a mediation referral order pursuant to Local Civil Rule 83.8.

---

[1] Defendants also misrepresent that individual defendant Bronislav Leydiker ("Leydiker") met with the Plaintiff when that is just not true; it was Alla from the bookkeeping office who met with him.  See Declaration of Plaintiff Mikhail Meerovich in Opposition ("Plaintiff Decl.") ¶¶ 12-18.

SA-24

## LEGAL STANDARD

§ 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement, provided that there is no issue regarding its formation or validity. See AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011).  In deciding a motion to compel arbitration, courts apply a similar standard to that applied to a motion for summary judgment and "draw all reasonable inferences in favor of the non-moving party." See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (citing Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171-72 (2d Cir. 2011)); Soliman v. Subway Franchisee Advert. Fund Tr., Ltd., 999 F.3d 828, 833-34 (2d Cir. 2021) (first quoting Nicosia, 834 F.3d at 229; and then quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017)).

Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." Id.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., provides that agreements to arbitrate are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. Validity, revocability, and enforceability of arbitration agreements are determined by reference to state law. See Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 629-31 (2009).

The party seeking arbitration bears the initial burden of showing that an agreement to arbitrate existed.  See Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010). The burden then shifts to the party resisting arbitration to show that the agreement is inapplicable or invalid. Id.

SA-25

The threshold question facing any court considering a motion to compel arbitration is ... whether the parties have indeed agreed to arbitrate.  See Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019) (quoting Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012))).  As argued below, the parties made no agreement and Defendants' motion must be denied.

## FACTS

In the interest of brevity, Plaintiff respectfully refers this Court to the Declaration of Plaintiff Mikhail Meerovich for the relevant facts.  See Plaintiff Decl. ¶¶ 1-26.

## ARGUMENT

## I.    THERE WAS NO VALID AGREEMENT TO ARBITRATE

Arbitration agreements are treated as any other contract; thus, they are governed by state law principles of contract formation.  See Schnabel, 697 F.3d at 119.   Because arbitration agreements are subject to the same principles as other contracts, "a party may be compelled to arbitrate a dispute only to the extent he or she has agreed to do so." See Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 569 (S.D.N.Y. 2009) (citing Bell v. Cendant Corp., 293 F.3d 563, 566-67 (2d Cir. 2002)); see also Bynum v. Maplebear Inc., 160 F. Supp. 3d 527, 533-34 (E.D.N.Y. 2016) ("Arbitration is a matter of contract.

When enforcing an arbitration agreement, as with any other contract, the parties' intentions control").  Under New York law, a contract is valid if there is "offer, acceptance, consideration, mutual assent and intent to be bound." See Rensselaer Polytechnic Inst. v. Varian, Inc., 340 Fed. Appx. 747, 749 (2d Cir. 2009)).  "In the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them." See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotation marks and citations omitted).

3

"Mutual assent requires, in turn, a meeting of the minds of the parties, and if there is no meeting of the minds on all essential terms, there is no contract." See Prince of Peace Enters., Inc. v. Top Quality Food Mkt., 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (cleaned up).

"'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements' in accordance with § 2 of the FAA." See Nayal, 620 F. Supp. 2d at 570 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). Section 2 of the FAA, therefore, "permits invalidation of arbitration clauses on grounds applicable to 'any contract.'" See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339-40 (2011).

The Supreme Court explained that there were two types of challenges to arbitration clauses: the first type challenges "'specifically the validity of the agreement to arbitrate,'" while the second challenges "'the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006)). "If a party challenges the validity ... of the precise agreement to arbitrate at issue,"—that is, makes the first type of challenge—"the federal court must consider the challenge before ordering compliance with that agreement[.]" Id. at 71. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 528 (2019); see also Nicosia, 834 F.3d at 229 ("The question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.").

Crucially, under New York contract law, "'if the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.'" <u>See</u> <u>Ahmed v. Domino's Pizza LLC</u>, No. 21-CIV.-3113 (CS), 2022 WL 2666005, at *5 (S.D.N.Y. July 11, 2022) (<u>citing</u> <u>Solis v. ZEP LLC</u>, No. 19-CIV.-4230, 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020) (<u>quoting</u> <u>Pimpinello v. Swift & Co.</u>, 253 N.Y. 159, 163 (1930))).

Here, it is patently evident the parties did not agree to arbitrate. Defendants pushed the Plaintiff into a room, misrepresented the contents of the writing, directed him to quickly complete the agreement and sign it, implying along the way that he will lose his job if he does not do so, and provided him no opportunity whatsoever to have the agreement reviewed before completing it. <u>See</u> <u>Plaintiff</u> <u>Decl.</u> ¶¶ 5-21. Moreover, the contents of the agreement were clearly misread to the Plaintiff, as Defendants merely told him "this is the work agreement" and failed to explain in any detail that they outlined everything he was agreeing to by signing the agreement then and there. This is contrary to Defendants' false story that Plaintiff took the agreement home with him and returned it signed. <u>Id.</u> at ¶¶ 15-21. Because this is a classic case of employer overreaching of a helpless and indigent employee, there can be no finding that the parties agreed to arbitrate.

## II.    THE FORUM SELECTION CLAUSE IS UNENFORCEABLE

To determine whether a forum selection clause is enforceable, the Court must ask: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive," i.e., whether the parties "are required to bring any dispute to the designated forum or simply permitted to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." <u>See</u> <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 217 (2d Cir. 2014).

"If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. A party may only overcome this presumption by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. To rebut a presumption that a forum selection clause is valid, a party must show that: (1) the forum selection clause's incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC, 509 F. Supp. 3d 38 (S.D.N.Y. 2020).

A forum selection clause is unreasonable if, among other reasons, the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court" or enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, in this case New York state court. See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972).

In deciding a motion to dismiss based on a forum-selection clause, "a district court typically relies on pleadings and affidavits," unless disputed facts exist that would require an evidentiary hearing. See Martinez, 740 F.3d at 216-17 (2d Cir. 2014). "The overriding framework governing the effect of forum selection clauses in federal courts ... is drawn from federal law." See Martinez, 740 F.3d at 217. To determine whether to enforce a forum-selection clause, i.e., step four of the analysis, courts apply federal law. Id.

6

Here, the forum selection clause is invalid on the same grounds as the arbitration agreement, and on other grounds.

First, the clause was not reasonably communicated to the Plaintiff. As set forth above, Plaintiff has a very rudimentary understanding of the English language and, while he can speak English, he cannot read a complicated nine-page single-spaced contract presented to him in less than five (5) minutes. Second, even assuming that he can read English (which he cannot) and was given ample to read it (he was not), the forum selection clause – while bolded – is buried in the penultimate page without being capitalized and is therefore insufficiently conspicuous.

In addition, enforcement of the forum selection clause would be unreasonable and unjust because Plaintiff seeks to pursue a class action under Rule 23, which would permit a class action of statutory claims under New York Labor Law § 195 for recordkeeping violations, while Article 9 of the New York Civil Practice Law & Rules prohibits class action of those claims because they are considered penalties. By forcing Plaintiff into state court to litigate his federal and state claims there, Plaintiff is unreasonably and unjustly being deprived of his rights.

Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(3) must be denied.

## III.    ALTHOUGH INVALID, PLAINTIFF HAS NO OBJECTION TO MEDIATION

As set forth above, there was no meeting of the minds because Defendants swindled and took advantage of the Plaintiff's inability to understand the written English word and his desire to keep his job. However, although the parties' purported agreement was invalid, and in an effort to conserve judicial resources consistent with Rule 1, Plaintiff is prepared to mediate his claims under Local Civil Rule 83.6 or at JAMS so long as Defendants pay the entire cost of a mediation before JAMS.

Indeed, Plaintiff has already submitted a settlement demand for Defendants' consideration.

SA-30

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that this Court grant deny Defendants' motion in its entirety, or – alternatively – stay a determination of the instant motion pending mediation under Local Civil Rule 83.6 or at JAMS (so long as Defendants pay in full).

Dated:   Flushing, New York
        June 26, 2023             Respectfully submitted,

                                  **AKILOV LAW, P.C.**

                                  By:   */s/   Mark Akilov, Esq.*
                                  Mark Akilov, Esq.
                                  147-44 Jewel Ave
                                  Flushing, NY 11367
                                  646-361-6274
                                  MAkilov1@gmail.com

                                  *Attorneys for Plaintiff*

8

SA-31

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**MIKHAIL MEEROVICH,**

**Plaintiff,**

- against -

**BIG APPLE INSTITUTE INC., and**
**BRONISLAV LEYDIKER**

**Defendants.**

**Case No. 1:22-cv-07625**

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

**SITARAS & ASSOCIATES, PLLC**
George Sitaras, Esq.
Gerasimos D. Liberatos, Esq.
200 Liberty Street 27th Floor
New York, New York 10281
Tel: (212) 430-6410
*Attorneys for Defendants*
*Big Apple Institute, Inc. and*
*Bronislav Leydiker*

Defendants Big Apple Institute, Inc. ("Big Apple") and Bronislav Leydiker ("Leydiker") (collectively "Defendants") respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss Plaintiff Mikhail Meerovich's ("Meerovich" or "Plaintiff") complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, compel arbitration pursuant to the Federal Arbitration Act ("FAA").

## PRELIMINARY STATEMENT

In an attempt to vitiate an otherwise valid forum selection and arbitration clause in the Employment Agreement dated January 1, 2019 ("Agreement"), Plaintiff claims that he was unable to understand English, and was "pushed … into a room, misrepresented the contents of the writing, directed him to quickly complete the agreement and sign it, implying along the way that he will lose his job if he does not do so and provided him no opportunity whatsoever to have the agreement reviewed before completing it." (*See* Plaintiff's Memo of Law p. 5).

Although Defendants dispute these allegations, even assuming *arguendo* that they were true, they still would not be enough to void the Agreement in light of the long line of New York cases holding that a party cannot be excused for his or her own failure to read and understand the contents of an agreement. Moreover, Plaintiff admits that he understood he was signing a "work agreement", in which he "fill[ed]" the blanks in the Agreement *in English*, and it was his alleged failure to have the Agreement explained to him or translated.

Accordingly, Defendants' motion to dismiss the Complaint, or stay the action and compel mediation and arbitration pursuant to the dispute resolution clause in the Agreement must be granted.

1

SA-33

## ARGUMENT

**PLAINTIFF'S EXCUSE THAT HE FAILED TO READ OR
UNDERSTAND THE AGREEMENT IS INSUFFICIENT
TO VITIATE THE AGREEMENT UNDER NEW YORK LAW**

It is well settled under New York law that "a party will not be excused from his failure to read and understand the contents" of a contract. *De Jesus v. Gregorys Coffee Mgt., LLC,* 2022 US Dist LEXIS 139619, at *24 (EDNY June 9, 2022, No. 20-CV-6305 [MKB] [TAM]); *see also Solis v ZEP LLC,* 2020 US Dist LEXIS 50797, at *10 (SDNY Mar. 24, 2020, No. 19cv4230 [JGK]]) (stating that "someone who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms").

"New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve the employee of making a reasonable effort to have the document explained to him." *Id.; see Solis,* 2020 US Dist LEXIS 50797, at *10 (stating that "[a] person who is illiterate in the English language is not automatically excused from complying with the terms of a contract simply because he or she could not read it[, because] [s]uch persons must make a reasonable effort to have the contract read to them.")

To fit within the "narrow exception", the movant must establish that the "signer is illiterate, or blind, or ignorant of the alien language of the writing, **and** the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void*." Solis,* 2020 US Dist LEXIS 50797, at *10 (citing *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 170 N.E. 530, 531 [N.Y. 1930]). (emphasis added).

Moreover, when a party claims that an agreement is unconscionable it must prove "that he was misled, or that the contents of the agreements were 'misread or misrepresented to him.'" *De Jesus*, 2022 US Dist LEXIS 139619, at *24. Indeed, "[a] misunderstanding, or lack of inquiry, regarding the nature of a contract is not enough to prove procedural unconscionability." *Id.* (citing to *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 US Dist LEXIS 61421, at *31 [SDNY May 6, 2015] [finding no evidence that high pressure tactics were used but holding that "even if someone had, that would not be enough to make the agreement unconscionable"]); *see also Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 [SDNY 2009]) (holding that "even if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis and [the party] refused to negotiate the Arbitration Provision, this is not sufficient under New York law to render the provision procedurally unconscionable."); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (holding that "[t]he mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, also is insufficient to invalidate the provision.").

However, a defense of unconscionability requires a showing of not only procedural unconscionability, but substantive unconscionability as well, which exists when the terms are grossly unreasonable by favoring the party seeking to enforce the contract. *De Jesus*, 2022 US Dist LEXIS 139619, at *24 (citing to *Gonzalez v Toscorp Inc.*, 1999 US Dist LEXIS 12109, at *7 [SDNY Aug. 5, 1999, 97 Civ. 8158 (LAP)]) (stating that "a mandatory arbitration clause is a reasonable means by which an employer can seek to protect itself from protracted litigation," and is not, by itself, unconscionable.)

SA-35

In *De Jesus*, a case on all fours with the one at bar, the employee argued that the arbitration agreement is void because he was incapable of reading and understanding any legal document written in English and because the employer told the employee they were "documents" he needed to sign. *De Jesus*, 2022 US Dist LEXIS 139619, at *24. The District Court rejected the employee's arguments and held that the employee failed to establish that the employer used misleading or high-pressure tactics to secure the employee's signature on the agreements to arbitrate. *Id.* The Court reasoned that "[t]here was no credible evidence offered to demonstrate that [the employee] was affirmatively misled about the contents of the arbitration agreements, or that he was denied an opportunity to review and ask questions about them." *Id.* at *26. In its reasoning, the Court noted that although Plaintiff did not appear to be fluent, "he did speak and understand some English".

Moreover, the Court in *De Jesus*, rejected the employee's contentions that the agreement was unconscionable because it was required to sign the arbitration agreement at Gregorys Coffee. The Court held that "courts in this circuit have found that including an arbitration agreement as a condition of employment does not render it procedural unconscionable." *Id.* at *29. The Court added that the employee has a reasonable opportunity to learn about the terms of the arbitration agreements, "[b]ut there was never a time … when [the employee] went to [the employer] to express any concerns with respect to the arbitration agreements" *Id* at *27.

Here, as in *De Jesus*, the Plaintiff fails to meet its burden of showing that the Agreement falls within the narrow exception because Plaintiff's affidavit does not allege,

he was illiterate, or blind, or ignorant of the English language, **and** that the contents thereof are misread or misrepresented to him.

To the contrary, Plaintiff admits that he filled-in information in the Agreement **in English**, which included his name, address, employment position [i.e. "cook-assistant"], start date [1/1/2019], and school year [2018-2019].  (Meerovich Decl. ¶15)

Moreover, Plaintiff admits that he had a "basic and rudimentary" understanding of English and can communicate in English, not that he was illiterate, blind or ignorant of English, as required to meet the narrow exception to void the Agreement. (*Id.*, ¶6)

Furthermore, Plaintiff cannot meet the second element—that the contents of the Agreement were misread or misrepresented to him—because he admits that "no explanation" was given to him. (*Id.*, ¶21 ["There was no explanation as to what the agreement contained, except that 'this is the work agreement,' or words to that effect"]). His admission that he was told the document was a "work agreement", which is an accurate description of the document, further undermines his position because he understood the subject matter and purpose of the document.

Plaintiff also does not allege that he made any effort to ascertain the contents of the Agreement, or to read and understand it before signing.  For instance, he did not allege that he asked Defendants to explain, interpret or translate the Agreement before signing, or that they refused to do so.

Instead, Plaintiff's testimony, even if fully credited by this Court, is devoid of any allegations that he was affirmatively misled about the contents of the arbitration agreements, or that he was denied an opportunity to review and ask questions about them.

Rather, Plaintiff concedes that he made no reasonable effort to have the Agreement explained to him or translated.

The fact that Big Apple required the Agreement as a condition to employment is not unreasonable or unconscionable, and permitted under New York law. *De Jesus*, 2022 US Dist LEXIS 139619, at *29.

Lastly, the two cases cited by Plaintiff are readily distinguishable with the facts at bar. In *Syed Alamgir Ahmed v. Domino's Pizza LLC*, 2022 US Dist LEXIS 122111, at *12 (SDNY July 11, 2022, No. 21-CV-3113 [CS]), the court noted "that if Plaintiffs do not understand English and relied exclusively on the Bengali translation of the Acknowledgement, the contents of the Arbitration Agreement were misrepresented and the contract is void. However, the court held that "[w]ithout a hearing to determine the extent to which Plaintiffs understand English and whether they in fact relied on the Bengali translation, [the court] cannot rule as to whether the Arbitration Agreement is void." *Id.*

In *Solis,* 2020 US Dist LEXIS 50797, at *10, the court held that the employer exploited a close relationship with an employee as well as the employee's lack of English literacy to place the employee in a situation in which he would sign the arbitration agreement on the spot without a meaningful opportunity to have the agreement translated. Indeed, the court's holding were based on facts where the employee was forced to sign the arbitration agreement "under circumstances that were sufficiently rushed in the kitchen amidst other employees that he did not recall the specifics."

In contrast to *Syed Alamgir Ahmed* and *Solis*, Plaintiff admits he can understand basic English, and did not rely on translation or explanation of the Agreement by the Defendants or a third party. Accordingly, no evidentiary hearing is warranted.

SA-38

Thus, the Court should respectfully dismiss Plaintiff's Complaint in its entirety based on the forum selection and arbitration clauses in the Agreement.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should dismiss this action for improper venue or, alternatively, compel arbitration.

Dated: New York, New York
       July 25, 2023

                       **SITARAS & ASSOCIATES, PLLC**

                       By:   */s/ Gerasimos D. Liberatos*
                               George Sitaras, Esq.
                               Gerasimos D. Liberatos, Esq.
                       200 Liberty Street 27th Floor
                       New York, New York 10281
                       Tel: (212) 430-6410
                       *Attorneys for Defendants*
                       *Big Apple Institute, Inc. and*
                       *Bronislav Leydiker*